393 Pa. 10 (1958)
Scranton Board of Zoning Appeals, Appellant,
v.
Silas.
Supreme Court of Pennsylvania.
Argued May 1, 1958.
May 26, 1958.
*11 Before JONES, C.J., MUSMANNO, ARNOLD, JONES and COHEN, JJ.
James K. Peck, with him David J. Reedy, Jr., and Emanuel Laster, for appellants.
William Zacharellis, for appellees.
OPINION BY MR. JUSTICE MUSMANNO, May 26, 1958:
Stanley A. Stonier and Florence E. Stonier, his wife, as owners of a certain building in Scranton, and Textiles, Inc., as tenants of the building, applied to the Superintendent of Building Inspection for a certificate of use which would permit the tenant to use the property in accordance with the terms of its lease, namely, a "store for the sale of, and dealing in wearing apparel, and materials for wearing apparel, dry goods, textile products, and general merchandise."
The premises in question, 1327-29 Wyoming Avenue, Scranton, are located within "B" Zone, so designated *12 by a Scranton city ordinance of 1924, section 3 of which provides: "In the `B' Zones no building, structure or premises shall be used . . . except for the following purposes or uses: . . . (b) Retail stores for the sale of food products, wearing apparel, drugs, confectionery, tobacco and general merchandise for local neighborhood use."
The Superintendent of Building Inspection refused the requested certificate, and the owners, with Textiles, Inc., appealed to the board of zoning appeals which, after a full hearing, reversed the superintendent and directed him to issue the use permit. Two property owners in the neighborhood, Alex Silas and Nicholas R. Fellis, appealed the board's decision to the court of common pleas which decided that the applicants were not entitled to a certificate of use because the business in which they were engaged violated the zoning ordinance. The applicants and the board then appealed to this Court.
The record clearly demonstrates that the board abused its discretion in awarding the certificate of use. The commercial enterprise operated by Textiles, Inc. does not remotely qualify under the provisions of the zoning ordinance as quoted. The ordinance permits retail stores in Zone B, but Textiles, Inc. is, by admission of its president, Edward Gordon, a wholesale and retail store. One witness testified that Gordon said that 90% of his business is wholesale. Another witness testified that Gordon said that "the place is going to be a wholesale, and a small part of it would be retail remnants place."
The wording of subsection (b), section 3 of the ordinance precisely describes the nature of the business places to be permitted in the restricted B zone, namely, "Retail stores for the sale of food products, wearing apparel, drugs, confectionery, tobacco and general merchandise *13 for local neighborhood use." One can easily visualize the type of stores here intended  one where the home owner can have a prescription filled, one where he may pick up some groceries for the table, others where he can buy a belatedly-recalled box of candy for his wife's birthday, tobacco for his pipe, an occasional shirt, blouse or other wearing apparel  all summed up in the phrase "for local neighborhood use."
Textiles, Inc. argues that its textile business falls within the ambit of "general merchandise." However, it ignores that this phase is severely limited by the expression "for local neighborhood use." Only by an illegal surgical operation can "for local neighborhood use" be amputated away from "general merchandise."
But, the appellants argue, "for local neighborhood use" is not so restrictive that it cannot cover the sale of goods to customers beyond the reaches of the store. It is to be admitted that language can be elusive and capable of varying interpretations, depending upon the particular rhetorical framework in which it operates. Thus, the appellants insist that they are not violating the ordinance when they sell goods to customers as far away as Wilkes-Barre, Nanticoke, and even New York. They attempt to justify this interpretation by quoting from the case of Hancock Street Extension, 18 Pa. 26, 32, where this Court said: "These words (neighborhood, vicinity) have no fixed standard of meaning, denote no particular distance . . . We would say Germantown was in the vicinity of Philadelphia . . . and the moon in the vicinity of the earth . . . when applied to a practical matter, might very readily cause disagreement in honest minds . . ."
It is true that when discoursing on the solar system one may well say that the planet Mars is but a trifling 35 million miles away from Earth whereas Jupiter is beyond the suburbs, being 367 million miles beyond *14 the outer crust of the planet on which we temporarily reside. But, be that as it may, it would be stretching language to an aching point to say that the authors of the Scranton ordinance had in mind that denizens of Manhattan might run over to Scranton to buy a pair of slacks or a package of corn flakes which they could easily obtain in any of the thousands of emporia nestling in the shadows of the skyscrapers of New York.
It would seem logical to assume that the ordinance writers, by providing for retail stores for the sale of general merchandise "for local neighborhood use" intended to control and limit the size and volume of the operation of businesses to those required in a neighborhood so that there would not spring into being what is being attempted by appellants, namely, a large-scale merchandising establishment, bringing in its train an augmentation in traffic and noise caused by frequent trucks making deliveries and pick-ups. Witnesses testified to truck and trailer activity around Textiles, Inc., hardly consistent with neighborhood quiet and tranquillity.
Of course, it is general knowledge that today one finds extraordinary activity in and around super-market stores, even in suburban areas, where residents may buy anything from baby rattles up to pre-fabricated houses. However, we can only decide cases on the particular facts involved in the instant litigation and there is nothing in the present record which would suggest that there has been a relaxation of the limitation spelled out in the Scranton ordinance of 1924.
The appellants argue further that "there is no police power relationship between the public's health, safety and morals and a law prohibiting a store from mailing a portion of its goods to out-of-town customers" and that, therefore, such a limitation is unconstitutional. But we have many times decided that commercial *15 enterprises may constitutionally be excluded from residential districts. In Volpe Appeal, 384 Pa. 374, 377, we said: "The Courts have even gone so far as to hold that municipalities may, without violating the Constitution, exclude from residential districts,  for reasons of health and safety  business and trade of every sort, including hotels and apartment houses."
The Supreme Court of the United States in the case of Euclid Village v. Ambler Realty Co., 272 U.S. 365, in discussing the question of zoning legislation which excludes business and trade from residential districts, said: "The decisions of the state courts are numerous and conflicting; but those which broadly sustain the power greatly outnumber those which deny altogether or narrowly limit it; and it is very apparent that there is a constantly increasing tendency in the direction of the broader view."
It is clear from the record that the operation of the commercial enterprise in the hands of Textiles, Inc., considering its size and scope, would have a very definite bearing on the public health, safety and general welfare of the community, and that the limitations in the zoning ordinance, directed to businesses "for neighborhood use" only, constitute a constitutional exercise of police power.
Order affirmed; costs to be paid by appellants.