**In Re: Appeal of Bruce JONES from the Decision of the Zoning Hearing Board of Upper Moreland Township.**

**Appeal of: Bruce Jones.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 2011.

Decided July 1, 2011.

Publication Ordered Oct. 17, 2011.

Marc D. Jonas, Blue Bell, for appellant.

Joshua S. Ganz, Fort Washington, for appellee.

BEFORE: COHN JUBELIRER, Judge, and BROBSON, Judge and McCULLOUGH, Judge.

OPINION BY Judge McCULLOUGH.

Bruce Jones appeals from the April 30, 2010, order of the Court of Common Pleas of Montgomery County (trial court), which affirmed the decision of the Zoning Hearing Board of Upper Moreland Township (ZHB) denying Jones' application for a use variance. We reverse.

Jones owns real estate (the Property) located at 517 Moreland Road, Willow Grove, in Upper Moreland Township (the Township). The Property is situated at the corner of Moreland Road and Cameron Road and is in the Township's Residential–4 zoning district.[1] The Property is improved with a large, six-bedroom single-family home, a detached garage, and an asphalt parking area. It is surrounded by office uses, vacant properties, and a residential district, and it is only two blocks from a major shopping center.[2]

Jones purchased the Property in 2008[3] and thereafter applied to the ZHB for a use variance to use the Property as a professional office, a parking variance to reduce the number of required parking spaces, and a design variance from a requirement to plant a strip of ground. At the May 28, 2009, hearing before the ZHB, Jones testified that he wished to use the Property for his Allstate Insurance Agency, which is currently located at 447 Moreland Road, approximately one block from the Property. (Reproduced Record (R.R.) at 19a.) Jones' business has been located in the same neighborhood as the Property since 1994, and Jones testified that the existing business has not generated any traffic problems. (R.R. at 19a, 31a, 69a.) The insurance agency is a family business with four employees: Jones; his two adult sons; and another employee. (R.R. at 18a.) Jones and his sons ride to work in one car, and the non-family employee either rides her bike or drives to work depending on the weather. (R.R. at 39a.) Jones testified that a maximum of three or four customers visit the agency per day. (R.R. at 31a.) He stated that four parking places exist on the property and that he is willing to add more. (R.R. at 25a–28a.)

Jones also presented the testimony of Henry Jacquelin, a real estate broker with forty-seven years of experience in the Township. Jacquelin testified that the area has changed since the residence was constructed, the Property is no longer viable for residential use, and the Property cannot be sold as a residence. (R.R. 24a–26a.) Jacquelin stated that the Property was listed for sale from 2001 to 2008, (R.R. at 23a.), and that almost all of the inquiries he received were for commercial and professional uses. (R.R. at 27a.) Jacquelin also estimated that the traffic level along Moreland Road is approximately 18,000 to 20,000 vehicles per day. (R.R. at 23a.)

Several area residents (Objectors) appeared at the hearing and testified with regard to their concerns. Specifically, David Twinning agreed that Jones' business will not produce traffic, but stated that granting the variance will set a precedent and increase traffic in the neighborhood in the future. He expressed concern that Jones' business may grow and in-

---

1. The Township and county planning agencies have recommended a comprehensive rezoning of the area that would change the Property's zoning from residential to professional office use; however, the rezoning has not been enacted.

2. The Property was adversely affected many years ago by the widening of Moreland Road from two to four lanes. As a result, there is a fifteen-foot difference in elevation from Moreland Road to the front yard of the Property.

3. The previous owner, in addition to using it as his residence, operated a concrete contracting business on the Property for approximately forty-four years.

crease traffic. (R.R. at 47a–49a.) John Luecke described traffic in the area as an "insane asylum" and expressed concerns about increased traffic, risks to children who live in the area, and parking. (R.R. at 52a–54a.) Frank DeLaurentis stated that he was concerned about dangerous sight lines on Moreland Road: he referred to the occurrence of three fatal accidents in the past twelve years, noted dangerous left turns, and worried about a diminished quality of life. (R.R. at 59a–62a.)

On June 11, 2009, the ZHB issued a decision that contained twenty-seven findings of fact that addressed the evidence presented by Jones and Objectors. The ZHB denied Jones' application in its entirety for the following reason:

> Based upon the testimony and exhibits presented, the Board did find that the Applicant had demonstrated hardship, but the Board found that the Applicant had not met his burden of proof with regard to no detriment to the surrounding community because of traffic safety issues.

(ZHB Decision, 6/11/2009, at 9.) Jones appealed the ZHB's decision to the trial court, which remanded the matter to the ZHB to allow Jones to introduce additional evidence.

On remand, Jones withdrew his requests for parking and design variances, and focused on his request for a variance to use the Property as a professional office. The ZHB conducted additional hearings and received into evidence, among other things, additional testimony from Jones and Jacquelin. Also, the ZHB received the Institution of Traffic Engineer's Trip Generation Manual, 8th ed., (R.R. at 164a–65a), which indicated that the number of trips generated by a single family dwelling is within a range between 4.31 to 21.85 trips per day, with an average of 9.57 per day.

Also, Objectors offered testimony during the remand hearings. David Szlachta testified that there are problems with left turns in the Moreland Road area and that traffic accidents recently took place. (R.R. at 255a–56a.) Frank DeLaurentis recalled a four-car accident that occurred at the corner of Moreland and Cameron, and stated that left turns from Moreland to Cameron are dangerous and create a risk of accidents. (R.R. at 257a–59a.) Peter Mola stated that four fatalities occurred in the area since 1982, and he worried that granting Jones' application would set a precedent. (R.R. at 263a–64a.) Echoing the other Objectors, John Luecke testified that there have been accidents in the area and that left turns are dangerous, and he was concerned that children might be injured by speeding traffic. (R.R. at 265a–69a.) Similarly, Daniel Gilligan expressed concerns about dangerous turns from Moreland Road, observed that the streets are narrow, lined with parked cars, and that children are on the street. (R.R. at 270a–71a.)

On September 24, 2009, the ZHB again denied Jones' application for a variance. Although the ZHB made several findings of fact regarding the evidence introduced by Jones and Objectors, the ZHB's decision turned on these salient findings:

> 8. The Board found that there were safety issues already existing at the corner of Moreland Road and Cameron Road which would be exacerbated by the proposed use . . . .
>
> 9. There were objections by persons in the neighborhood. Those objections included traffic and safety concerns . . . .

(ZHB Decision, 9/24/2009, at 3.) The ZHB explained:

> Although the Board reluctantly found that there was a hardship, the Board found that the other criteria of the Mu-

nicipalities Planning Code and the Township Zoning Ordinances, specifically with regard to the safety and welfare of the public, were not met. (ZHB Decision, 9/24/2009, at 4.) Jones appealed to the trial court, which affirmed the ZHB's decision.

■ On appeal to this Court,[4] Jones contends that the ZHB erred or abused its discretion by denying his request for a use variance based solely upon its finding that the proposed use would exacerbate traffic problems.[5]

Jones argues that he presented evidence showing that his proposed insurance office would generate no more traffic than would be expected from the existing single family home on the Property. Jones also argues that Objectors' testimony regarding safety and traffic problems in the vicinity of the Property is mere speculation and conjecture and thus does not constitute evidence that is competent to support the ZHB's findings. *Appeal of Fiori*, 69 Pa.Cmwlth. 463, 451 A.2d 804 (1982). We agree.

■ Our careful review of the record reveals that Jones produced substantial competent evidence to show that the proposed insurance agency is not a use that will generate traffic or worsen the traffic and safety conditions in the neighborhood. The evidence presented by Jones, which was not contradicted by Objectors or expressly rejected by the ZHB as not credible, shows that Jones has a small number of employees, expects to receive only a handful of customer visits per day, and has been operating his insurance business in a nearby location without causing traffic problems.

4. Because the parties presented no additional evidence before the trial court, our scope of review is limited to determining whether the ZHB committed an abuse of discretion or an error of law. *Borough of Moosic v. Zoning Hearing Board of Moosic*, 11 A.3d 564 (Pa. Cmwlth.2010). We may conclude that the ZHB abused its discretion only if its findings are not supported by substantial evidence, which is defined as such evidence as a reasonable mind might find adequate to support a conclusion. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983).

5. The burden is on the property owner to establish why he or she is entitled to a variance. *Swemley v. Zoning Hearing Board*, 698 A.2d 160 (Pa.Cmwlth.1997). In *Taliaferro v. Darby Township Zoning Hearing Board*, 873 A.2d 807, 811–812 (Pa.Cmwlth.2005), we provided this cogent summary of the law:

A zoning hearing board may grant a variance when the following criteria are met: (1) an unnecessary hardship will result if the variance is denied, due to the unique physical circumstances or conditions of the property; (2) because of such physical circumstances or conditions the property cannot be developed in strict conformity with the provisions of the zoning ordinance and a variance is necessary to enable the reasonable use of the property; (3) the hardship is not self-inflicted; (4) *granting the variance will not alter the essential character of the neighborhood nor be detrimental to the public welfare;* and (5) the variance sought is the minimum variance that will afford relief.
A variance applicant must show unnecessary hardship will result if a variance is denied and the proposed use will not be contrary to the public interest. (Citations omitted.) (Emphasis added).
Furthermore, section 23.03 of the Township Code (Code) provides that the applicant for a variance has the burden to prove that the Code inflicts an unnecessary hardship and that the application is not contrary to the public health, safety, and welfare. (R.R. at 546a.) The Code also directs the ZHB to consider, among other things, whether the variance application will be detrimental to the use of adjacent property; will cause undue congestion or danger to pedestrians, endanger the safety of persons or property by location or design of facilities for ingress or egress; will increase the danger of fire or otherwise endanger public safety; and will adversely affect the public health, morals, safety or general welfare. (R.R. at 546a–47a.)

However, the Township argues that Jones failed to carry his burden of proof because the ZHB accepted the testimony of Objectors as credible. Objectors' testimony, the Township asserts, is competent evidence under *Pennsy Supply v. Zoning Hearing Board of Dorrance Township*, 987 A.2d 1243 (Pa.Cmwlth.2009), because it is based on Objectors' firsthand experiences with traffic in the neighborhood.

In *Pennsy Supply*, a landowner wished to expand an existing quarry operation. The zoning hearing board conducted hearings, at which neighbors appeared and testified in opposition to the application. The zoning hearing board denied the landowner's application, and the trial court affirmed. On appeal to this Court, the landowner argued that the testimony of the neighbors was insufficient to sustain their burden of proof. We disagreed, reasoning as follows:

> In this case, the objectors raised several issues concerning the detriment Pennsy's proposed expansion would have on them and their community. Specifically, they presented evidence, subject to Pennsy's cross-examination, *about the impact current blasting operations* have on their residential wells, and the quality of their water as a result of the blasting. They also testified about the noise from blasting, how the accompanying dust and vibrations affect their quality of life. One objector discussed the negative impact the quarry has had on her property value. Others related that the Balliet Run stream has been destroyed by sediment from the quarry. They discussed that sediment and water is discharging from the quarry onto their properties due to the lack of monitoring and control by Pennsy. The objectors testified that the quarry's current operations have had a negative impact on local agriculture and local wildlife.

Pennsy characterizes the testimony of the objectors as speculative, since they are not experts on the subject matter about which they testified, and they did not verify their experiences with objective tests. Certainly, *if Pennsy's special exception was for a new use,* the objectors' testimony would be more likely to be speculative, and demonstrating detriment to a high degree of probability would be more difficult. *As we see it, however, the objectors' testimony can hardly be considered speculative when it was based upon the experiences they have had with Pennsy's current operations. Thus, under the circumstances, demonstrating a detriment to the community to a high degree of probability is a much easier task.* Moreover, the mere fact that the objectors are lay witnesses does not make their testimony less valuable than the 'expert' evidence proffered by Pennsy. *See Borger v. Towamensing Twp. Zoning Bd. of Adjustment,* 39 Pa.Cmwlth. 361, 395 A.2d 658 (Pa.Cmwlth.1978).

*Id.,* 987 A.2d at 1250 (emphasis added) (citations to the record omitted).

In contrast to *Pennsy Supply*, we concluded in *Fiori* that the testimony of a neighborhood resident was insufficient to support a zoning hearing board's findings. In *Fiori*, a resident expressed concerns that granting a variance to build a Dairy Queen store would increase traffic in the neighborhood, cause safety problems, and generate noise. The zoning hearing board denied the variance because, among other things, the proposed use would have an undesirable impact on the environs. In reversing that decision, we stated:

> Fiori also contests the Board's conclusion that the variance would alter the neighborhood's essential character, that development of adjacent property for el-

derly housing would be substantially impaired, and that detriment to the public health, safety and welfare would result. This conclusion is apparently based on a projected increase in traffic and on a certain resident's expressed concern regarding both pedestrian safety and the interruption of sleep caused by any additional noise generated by the proposed use. Fiori's expert testified that the Dairy Queen store would be compatible with the surrounding commercial use and would, in fact, constitute an improvement of the area. *No testimony, expert or otherwise, was proffered to demonstrate any specific adverse effects which the proposed use would have on the neighborhood. Furthermore, no testimony was presented to establish that any significant increase in neighborhood traffic would result from the Dairy Queen store, or that any such increase would be detrimental to the public health, safety or welfare.* Additionally, the same resident who voiced concern over hours of operation and loss of sleep due to increased noise made it clear that he was not objecting to the variance and, following Fiori's response to his concerns, indicated his satisfaction that the store would present no problem.

*Id.*, 451 A.2d at 806–07 (emphasis added).

Unlike *Pennsy Supply*, where the objectors testified to their personal experiences with existing noise and blasting activity at an operating quarry, the instant case involves a variance for a new use on the Property. Although Objectors testified about traffic problems that generally plague the Moreland Road area, there is no insurance agency or other professional office business currently operating on the Property and, consequently, they have no firsthand experience with any traffic or safety problems related to such a use.[6] Furthermore, as in *Fiori*, Objectors' testimony does not demonstrate specific adverse effects that Jones' proposed use will have on the neighborhood or that a significant increase in neighborhood traffic will result from the proposed use. We also observe that Objectors' testimony is not augmented by expert opinions, traffic studies, or accident reports demonstrating any adverse effect of the proposed use on the neighborhood. For these reasons, Objectors' testimony is not sufficient to support the ZHB's finding that traffic and safety problems would be exacerbated by Jones' proposed insurance agency use.[7]

Because the ZHB's decision to deny the variance due to an exacerbation of traffic and safety problems is unsupported by substantial evidence, we conclude that the ZHB abused its discretion by denying Jones' application for a variance. Accordingly, we reverse.[8]

---

6. We note that our analysis is consistent with Pa. R.E. 701, which permits lay opinion testimony based on a witness's personal knowledge, as well as the common law rule that lay witnesses may testify to those things they had seen, heard, felt, tasted, or smelled. *See Gibson v. Workers' Compensation Appeal Board (Armco Stainless & Alloy Products)*, 580 Pa. 470, 861 A.2d 938 (2004) (holding that lay opinion testimony on the technical subject of asbestos in the workplace was inadmissible, when the witness failed to demonstrate sufficient personal experience or technical knowledge to qualify him to offer an opinion).

7. This Court is sensitive to Objectors' concerns about pervasive traffic and safety problems in their community. However, those concerns might be addressed by the installation of improved traffic controls, such as traffic lights and other devices.

8. Jones also contends that the ZHB capriciously disregarded competent evidence. However, capricious disregard occurs only when the fact-finder deliberately ignores relevant, competent evidence. *Lamar Advantage GP Co. v. Zoning Hearing Board of Adjustment*, 997 A.2d 423 (Pa.Cmwlth.2010). Here, it is clear from our review of the decisions in

## ORDER

AND NOW, this 1st day of July, 2011, the April 30, 2010, order of the Court of Common Pleas of Montgomery County is hereby REVERSED.

this matter that the ZHB recognized and considered the evidence presented by Jones. The error here was the ZHB's reliance upon in-competent evidence, and not the deliberate disregard of competent evidence.