**University of Scranton v. City of Scranton Zoning Hearing Board**

*Patrick J. Lavelle*, for appellant
*Daniel L. Penetar, Jr.*, for respondent

NEALON, *J.*, August 9, 2013—A local university filed an application with the Zoning Hearing Board of the City of Scranton ("ZHB") seeking a dimensional variance for three sight distance triangle requirements in order to raze an existing nonconforming structure and replace it with a new building in the same dimensional footprint as the present, nonconforming structure. After the ZHB denied that dimensional variance request on the sole ground that the proposed new building will make use of the adjacent intersection "less safe" for motorists and pedestrians, the university filed this zoning appeal on the basis that the ZHB's traffic safety finding was not supported by substantial evidence in the record.

Under Pennsylvania decisional precedent, a zoning board may deny a variance due to traffic congestion and safety concerns, provided that the finding of adverse traffic effects is supported by expert testimony, accident reports or traffic count studies. The only expert evidence presented during the zoning hearing in this case indicated that the

existing sight distance nonconformity will "slightly" improve with the new building, that the police accident reports reflect no accidents at the subject intersection within the past five years, and that vehicular and pedestrian traffic will continue to travel safely through the intersection after the construction of the new building. No person testified in opposition to the university's variance request, nor was any competent evidence of adverse traffic effects introduced during the hearing.

A zoning board's decision is subject to reversal if the board abuses its discretion, and a zoning board commits an abuse of discretion if its findings are not supported by substantial evidence. Since the ZHB did not base its traffic safety finding upon the minimum proof of adverse traffic effects as required by appellate case law, it committed an abuse of discretion in denying the university's application for a dimensional variance. Furthermore, the zoning ordinance states that reconstruction or expansion of a pre-existing, nonconforming structure "shall" be permitted if such action will not increase the existing nonconformity or violate any setback requirements, and it is undisputed that the proposed construction will not increase the present nonconformity or contravene any setback restrictions. Accordingly, the ZHB's decision denying the university's request for three sight distance triangle variances will be reversed.

## I. FACTUAL BACKGROUND

On May 2, 1977, the University of Scranton ("the University") purchased the former YWCA building which

is located at the intersection of Linden Street and Jefferson Avenue in Scranton. (Docket entry no. 3, exhibit A at p. 7). The four story building, which is currently known as Leahy Hall ("Leahy Hall"), was originally constructed in 1907. (Scranton City Zoning Hearing Transcript ("ZHT") on 6/12/13 at pp. 4, 8; docket entry no. 3 at p.4). Leahy Hall is located in a "Downtown Commercial District" ("C-D Zone") for which there are no setback requirements under the Scranton zoning ordinance.[1] (ZHT 6/12/13 at pp. 25-26).

The University's physical therapy, occupational therapy and exercise science departments are located in Leahy Hall which is situated adjacent to McGurrin Hall, 219 Jefferson Avenue, which houses the University's Panuska College of Professional Studies. (*Id.* at pp. 7-8). "Expanded facilities" are "desperately needed" for the University's "physical therapy, occupational therapy and exercise science departments which have a strong existing relationship with the nursing programs and the Leahy Free Clinic which are located in McGurrin" Hall. (*Id.* at p. 8). Among those growing programs are therapy and exercise services that are provided by the University on a "pro bono" basis for children "who are severely and physically handicapped," have "autism" or "Down Syndrome," or are "clients of the Northeast Intermediate Unit." (*Id.* at pp. 11-13).

---

1. Section 307.B(4) of the City of Scranton zoning ordinance sets forth the "Minimum Building Setback" regulations for a C-D zone, and states that there are no setback requirements (i.e., front yard, side yard, rear yard or any yard abutting a public street) for a principal and accessory structure in a C-D zone. (*See* Scranton, Pa., Zoning Ordinance art. III, §307.B(4) at p. 3-23 (1993)).

The University explored the prospect of adding four additional floors to the existing Leahy Hall structure, but "after comprehensive studies by several architects over the past three to four years, it has been determined that the [Leahy Hall] building construction does not meet code" since "the floors do not align" and Leahy Hall's "existing wood structure simply isn't going to hold another four floors." (*Id.* at pp. 8-9). Additionally, the University investigated the possibility of adding the additional floors to McGurrin Hall, but two separate architectural firms concluded that McGurrin Hall's foundation and columns will not support an eight story structure. (*Id.* at p. 19). Consequently, the University developed plans to raze the current Leahy Hall facility and to construct a new eight story building in the same dimensional footprint as the existing structure. (*Id.* at pp. 8, 13-15). The projected construction of the new Rehabilitation Center Building will cost $47,500,000.00 and will generate up to $900,000.00 in permit fees for the City of Scranton. (Transcript of proceedings ("T.P.") on 8/5/13 at p. 18).

Section 803.C of the Scranton Zoning Ordinance prescribes sight distance requirements for buildings that are situated at intersections within the City of Scranton. As per Section 803.C.1 of the ordinance, the purpose of the sight distance restrictions is "[t]o ensure that traffic passing through an intersection or turning onto a street can safely see oncoming traffic." (Scranton, Pa., Zoning Ordinance art. VIII, §803.C.1 at p. 8-4 (1993)). Section 803.C.5 sets forth the minimum "sight distance triangle" requirements for intersections, and both the existing Leahy

Hall structure and the proposed Rehabilitation Center Building do not satisfy those requirements in the zoning ordinance. (ZHB 6/12/13 at p. 14).

However, Section 806.C of the zoning ordinance addresses "Nonconforming Structures" which were designed and constructed before the adoption of the 1993 zoning ordinance's dimensional restrictions, including its sight distance triangle requirements. Section 806.C.1(a) states that "[t]he Zoning Officer shall permit a nonconforming structure to be reconstructed or expanded" so long as "such action will not increase the severity or amount of the nonconformity...or create any new nonconformity" and the proposed "expanded area will comply with the applicable setbacks in that District." (Scranton, Pa., Zoning Ordinance art. VIII, §806.C.1(a) at pp. 8-7 to 8-8 (1993)). It is uncontested that the proffered construction of the University's Rehabilitation Center Building will not increase the existing sight distance nonconformity of Leahy Hall and, in fact, will actually decrease the present nonconformity as a result of the proposed loading and unloading zone for special needs and pediatric patients, which is to be installed in a recessed area on the Jefferson Avenue side. (ZHT 6/12/13 at pp. 9-10, 13, 15). Moreover, since the building is located in a C-D District which does not have any setback requirements, (*see* n.1, *supra*), the intended construction "will comply with the applicable setbacks in that District." Thus, the criteria for the grant of a permit for the expansion of a nonconforming structure (Leahy Hall) have been satisfied.

Although the language of Section 806.C.1(a) indicates

that the University was entitled to the issuance of a permit by the zoning officer without the necessity of securing dimensional variances, the University nevertheless filed an application with the Zoning Hearing Board of the City of Scranton ("ZHB") seeking three sight distance variances. In its application, the University represented that "[t]he proposed building footprint location will not worsen the present condition regarding the sight distances." (Docket entry no. 3, exhibit A at p. 1). The pertinent sight distance triangles relate to traffic turning (1) from Kressler Court onto Linden Street, (2) from Linden Street onto Jefferson Avenue, and (3) from Jefferson Avenue onto Linden Street. (*Id.* at p. 2). The University maintained in its application that "the sight distance triangle for traffic turning onto Linden Street from Kressler Court looking to the right does not apply since Linden Street is a one-way street where traffic only comes from the left direction." (*Id.*). The University further submitted that "[t]he sight distance triangle for traffic turning onto Jefferson Avenue from Linden Street should not apply since the intersection is signalized with cued traffic." (*Id.*). Last, the University asserted that "[t]he sight distance triangle for traffic turning onto Linden Street from Jefferson Avenue should not apply since Linden Street is one-way and does not currently accept traffic from Jefferson Avenue." (*Id.*).

On June 12, 2013, a hearing was conducted before the Scranton ZHB regarding the University's application for "a dimensional variance for sight triangle encroachment associated with new building construction at 219 Jefferson Avenue, a C-D Zone." (ZHT 6/12/13 at p. 1).

During the hearing, the project architect, David Hemmler of Hemmler Camayd Architects, addressed the existing building's nonconformity with the zoning ordinance's sight distance requirements, and confirmed that the dimensional "footprint of [the new Rehabilitation Center] building is actually better than the footprint of the existing building" and will reduce "the severity of the present nonconformity" relative to sight distance restrictions. (*Id.* at pp. 13, 15). Consistent with the representations contained in the University's application for a dimensional variance, the consulting professional engineer for the construction project, Mr. David Osborne of CECO Associates, Inc., explained why the sight distance triangles do not apply to the three traffic flow areas at issue. (*Id.* at pp. 24-27). Mr. Osborne testified that the proposed construction of a new Rehabilitation Center Building will not worsen the present sight distance triangles or create additional safety issues, and that with respect to "the corner of Jefferson [Avenue] and Linden [Street]," the new structure will "slightly improve...the existing sight triangle that is there today." (*Id.* at pp. 28-29).

Mr. Osborne also examined the available traffic accident data for the subject intersection, and reviewed the "accident reports for the last five years" that were provided by the Scranton Police Department. (*Id.* at p. 27). The accident records revealed that "none of the accidents were at the intersection itself or...a result of any sight line issues." (*Id.*). Although the project architect, Mr. Hemmler, stated that the proposed eight story structure "may increase slightly" the number of student pedestrians

using the intersection of Linden Street and Jefferson Avenue, (*Id.* at p. 16), Mr. Osborne opined that traffic will continue to travel safely through the intersection after the construction of the new Rehabilitation Building. (*Id.* at p. 23).

Two labor union representatives, Mr. Drew Simpson of Carpenters and Joiners Local 645 and Mr. Richard Shrader of the Scranton Building Trades Council, also spoke in support of the University's application for a dimensional variance. Mr. Simpson testified that the proposed project "will employ hundreds of local construction workers that will make a family sustaining wage," and will provide "a huge benefit to our members and to all of the people who are unemployed in all the building trades, not just the carpenters' union." (*Id.* at pp. 35-36). Mr. Shrader echoed those sentiments and stated that the University's proposal represents a "very good project for citizens in the City of Scranton" since it will create well paying jobs and produce direct revenue for the city in the form of permit fees. (*Id.* at pp. 37-38). No person objected to the University's application or otherwise voiced any opposition to the construction of a new Rehabilitation Center Building.[2]

---

2. One ZHB member, who ultimately voted against the University's application for a variance, questioned the project architect as to whether the University "consider[ed] building this facility" on other University-owned property, and the architect replied that the physical therapy, occupation therapy and exercise science building had to be "contiguous" to McGurrin Hall and its Panuska College of Professional Studies since the services and clinics offered by those programs "are directly related" to each other. (ZHT 6/12/13 at pp. 20-21). According to Commonwealth Court precedent, the fact that the applicant for a dimensional variance owns other property on which it could construct the proposed building in conformity with the zoning requirements is not relevant to the merits of the variance request. "The availability of other property is not a factor

At the conclusion of the hearing, a narrow majority of the ZHB members voted to deny the University's application for a dimensional variance, with Carri Newcomb, Stephen Bartnicki and Mary Ann Wardell voting against the application and Steven Kochis and Lance Stange voting in favor of the University's application. (*Id.* at pp. 38-39). In its subsequent decision dated June 20, 2013, the ZHB made three specific findings of fact that were predicated upon the evidence that was introduced during the hearing on June 12, 2013. First, the ZHB referenced Mr. Hemmler's testimony that "the footprint of the new building will be exactly the same as the old building as far as the sight triangle is concerned." (Docket entry no. 1, exhibit B at ¶5). Second, the ZHB cited the testimony of Mr. Osborne to the effect that: (a) "the purpose of the sight triangle is to ensure that traffic passing through an intersection can do so safely;" (b) "due to the traffic signals at the intersection and the one-way traffic of Linden Street, traffic passing through this intersection can, in fact, do so safely and has done so for many years;" and (c) the "accident reports in this area for the last five (5) years" confirmed that no accidents "occurred at this intersection." (*Id.* at ¶6). Last, the ZHB acknowledged the testimony of Mr. Simpson and Mr. Shrader who both stated that "the project will have a positive impact on jobs for their unions and permit fees for the City." (*Id.* at ¶7). The ZHB made no other findings of fact based upon the evidence presented during the zoning

that is relevant here, as the question of whether a [variance] hardship exists is one that is specific to the particular property at issue." *Schomaker v. Zoning Hearing Board of Borough of Franklin Park*, 994 A.2d 1196, 1204 (Pa. Cmwlth. 2010), *app. denied*, 611 Pa. 671, 27 A.3d 226 (2011).

board hearing.

In the "Conclusions of Law" section of its decision, the ZHB quoted portions of the foregoing zoning provisions relating to intersectional sight distance requirements and the expansion of pre-existing, nonconforming structures, as well as the criteria for the grant of a variance under section 111.E.3 of the zoning ordinance. (*Id.* at ¶¶10-12). Without providing any specific rationale for its denial of the University's application, the ZHB concluded its written decision by summarily stating that "[b]y a vote of 3 – 2, the Application for a Variance was denied." (*Id.* at ¶13). The board did not make any finding in its decision that the University's proposed construction would create safety hazards for motorists or pedestrians utilizing the intersection of Linden Street and Jefferson Avenue.

On July 3, 2013, the University filed the instant zoning appeal and secured a writ of certiorari directing the ZHB to file the zoning hearing transcript within twenty days. (Docket entry no. 1). On that same date, the court administrator assigned this appeal to the undersigned, fixed deadlines for the filing of the parties' briefs, and scheduled this matter for oral argument on August 5, 2013. (Docket entry no. 2). In accordance with the notice issued by the court administrator, the parties submitted their briefs on July 10, 2013, and July 23, 2013, (Docket entry nos. 3 – 4), and the ZHB subsequently filed the zoning hearing transcript on July 29, 2013. (Docket entry no. 5).

The University argues that it is entitled to its requested zoning relief under Section 806.C.1(a) of the zoning

ordinance since the proposed Rehabilitation Center Building will occupy the same dimensional footprint as the existing nonconforming structure, Leahy Hall. (Docket entry no. 3 at pp. 10-11). The University further asserts that the ZHB abused its discretion by not granting the requested dimensional variance pursuant to Sections 803.C and 111.E.3 of the zoning ordinance. (*Id.* at pp. 9-10). In its brief in opposition, the ZHB states for the first time that "[t]he Zoning Board found that the proposed new building would increase the student traffic at the intersection thus making it less safe for both the students and the oncoming traffic." (Docket entry no. 4 at p. 3). Following the completion of oral argument on August 5, 2013, this zoning appeal became ripe for disposition.

## II. DISCUSSION

### (A) STANDARD OF REVIEW

If no additional evidence is presented to the trial court, the scope of judicial review in a zoning appeal is limited to determining whether the zoning hearing board committed an error of law or abused its discretion. *Appeal of Chester County Outdoor, LLC*, 64 A.3d 1148, 1151 n.3 (Pa. Cmwlth. 2013); *TKO Realty, LLC v. Zoning Hearing Board of the City of Scranton*, 2010 WL 3936990, at *3 (Lacka. Co. 2010), *aff'd*, 23 A.3d 1131 (Pa. Cmwlth. 2011). A zoning hearing board abuses its discretion when its findings of fact are not supported by substantial evidence in the record. *Miravich v. Township of Exeter*, 54 A.3d 106, 110 n. 4 (Pa. Cmwlth. 2012); *City of Scranton v. Zoning Hearing Board of the City of Scranton*, 101 Lacka.

Jur. 159, 161 (1999), *aff'd*, 767 A.2d 33 (Pa. Cmwlth. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Philadelphia Suburban Development Corp. v. Scranton Zoning Hearing Board*, 41 A.3d 630, 633 n. 8 (Pa. Cmwlth. 2012); *World Schoolhouse Residences Limited Partnership v. Zoning Hearing Board of City of Scranton*, 102 Lacka. Jur. 14, 18 (2000), *aff'd*, 777 A.2d 544 (Pa. Cmwlth. 2001), *app. denied*, 567 Pa. 753, 788 A.2d 382 (2001).

(B)     PRE-EXISTING,     NONCONFORMING STRUCTURE

Section 202 of the Scranton zoning ordinance defines a "Nonconforming Structure" as any structure that was not designed or constructed in compliance with the applicable dimensional provisions of the ordinance, but which "lawfully existed prior to the enactment of such Ordinance or applicable amendment." (Scranton, Pa., Zoning Ordinance art. II, §202 at p. 2-1 (1993)). At the time that Leahy Hall was originally erected in 1907, there were no zoning laws in effect in Scranton which contained any sight distance requirements. The first Scranton zoning ordinance was enacted in 1924, seventeen years after the construction of Leahy Hall. *See In re Emilliani's License*, 30 Pa. D. & C. 276, 278-279 (1937) (stating that the 1924 "Zoning Ordinance derives its authority from the Act of June 21, 1919, P.L. 570, as amended by the Act of May 11, 1921, P.L. 503, and further supplemented by the Act of May 1, 1923, P.L. 122."). Section 39 of the 1924 ordinance provided that nonconforming structures or uses which

predated the adoption of that zoning ordinance were not subject to its prohibitory zoning restrictions. *See Smith v. Westpfahl*, 52 Pa. D. & C.51, 53-55 (Lacka. Co. 1945) (since landowner's property had housed an automobile repair and service station prior to 1924, it could maintain an apron manufacturing business on that property, even though the property was redistricted into a residential zone by the 1924 ordinance, since the apron manufacturing business was a "non-conforming use of a similar class.").

The 1924 ordinance remained in effect for more than forty years, *see, e.g., Board of Zoning Appeals of City of Scranton v. Silas*, 393 Pa. 10, 11-12, 142 A.2d 24, 25 (1958), until it was replaced by a new zoning ordinance in 1965. *See Putkowski v. City of Scranton*, 58 Pa. Cmwlth. 604, 606, 428 A.2d 743, 744 (1981). The 1965 zoning ordinance was supplanted by a subsequent zoning code on December 28, 1983, *see Holmes v. Board of Zoning Appeals of City of Scranton*, 130 Pa. Cmwlth. 349, 351 n. 2, 568 A.2d 301, 302 n. 2 (1990), which, in turn, was replaced by the current zoning ordinance that was adopted by Scranton City Council on December 15, 1993, and became effective on December 21, 1993. *See Philadelphia Suburban Development Corp.*, 41 A.3d at 631 n.2.

Leahy Hall has continued to operate as a valid nonconforming structure since the adoption of Scranton's first zoning ordinance in 1924. By the time that the current zoning ordinance was enacted in 1993, Leahy Hall had "lawfully existed" for decades as a pre-existing, nonconforming structure under the 1924, 1965 and 1983 zoning ordinances. Section 806.C.1(a) of the present

Scranton zoning ordinance states that "[t]he Zoning Officer *shall* permit a nonconforming structure to be reconstructed or expanded provided: (i) that such action will not increase the severity or amount of the nonconformity...or create any new nonconformity," and "(ii) that any expanded area will comply with the applicable setbacks in that District and other requirements of this Ordinance...." (Scranton, Pa., Zoning Ordinance art. VIII, §806.C.1(a)(i)-(ii) at pp. 8-7 to 8-8) (emphasis added). It is uncontroverted that the proposed construction of the new Rehabilitation Center Building will not create any new nonconformity or increase the existing nonconformity, nor will it violate any setback provision inasmuch as it is located in a C-D zone where setbacks are not required. (*See* n.1, *supra.*). Hence, based upon the evidentiary record that was developed before the ZHB and which has been submitted for our review, section 806.C.1(a) of the Scranton zoning ordinance obligated the Scranton zoning officer to permit the proposed construction of the new Rehabilitation Center Building in the same dimensional footprint as Leahy Hall. *Compare Trettel v. Zoning Hearing Board of Harrison Township*, 540 Pa. 430, 434, 658 A.2d 741, 742 (1995) (where language of Harrison Township zoning ordinance stated that a nonconforming use "may be continued" provided that certain criteria were satisfied).

Under Pennsylvania law, the owner of property to which a lawful, nonconforming use has attached enjoys a vested property right that cannot be abrogated or destroyed unless it constitutes a nuisance, is abandoned by the owner, or is extinguished by eminent domain. *Pappas*

*v. Zoning Board of Adjustment of City of Philadelphia*, 527 Pa. 149, 152-153, 589 A.2d 675, 676-677 (1991); *TKO Realty, LLC, supra*, at *3; *City of Scranton*, 101 Lacka. Jur. at 162. In addition, "[t]he property owner has the vested constitutional right to a natural expansion of a non-conforming use." *Bernotas v. Zoning Hearing Board of City of Bethlehem*, 2013 WL 2450160, at *6 (Pa. Cmwlth. 2013). Under the doctrine of natural expansion, such a "nonconforming use may be extended in scope, as the business increases in magnitude," *Id.* (quoting *Peirce Appeal*, 384 Pa. 100, 105, 119 A.2d 506, 509 (1956)), and "an overly technical assessment of a nonconforming use cannot be utilized to stunt its natural development and growth." *Id.* (quoting *Township of Chartiers v. William H. Martin, Inc.*, 518 Pa. 181, 188, 542 A.2d 985, 988 (1988)).

In light of the clear language of Section 806.C.1(a) of the Scranton zoning ordinance and the unchallenged evidence establishing that the construction of the new Rehabilitation Center Building will not increase the present nonconformity or contravene any applicable setback requirement, the Scranton zoning officer had an apparent duty to issue a permit to the University for the proposed construction. *See Com. v. Barker*, 2013 WL 3475480, at *7 (Pa. Super. 2013) (use of the term "shall" in a statute or other law "denotes a lack of discretion by the person directed to carry out the task directed" since the word "'shall' means 'must.'"); *In re A.B.*, 987 A.2d 769, 775 (Pa. Super. 2009) ("Moreover, when a statute contains the word 'shall' it is 'by definition mandatory, and is generally applied as such.'"), *app. denied*, 608

Pa. 644, 12 A.3d 369 (2010); *Taterka v. Bureau of Professional and Occupational Affairs*, 882 A.2d 1040, 1043 (Pa. Cmwlth. 2005) ("It is axiomatic under our statutory construction precedent that, by definition, the word 'shall' is mandatory, and accordingly entertains no room to overlook a statute's plain language to reach a different result."). The record is devoid of any explanation as to why the zoning officer did not grant a permit to the University in compliance with Section 806.C.1(a) of the Scranton zoning ordinance.[3] For whatever reason, the University opted not to challenge the zoning officer's failure to issue a permit for the construction of the new Rehabilitation Center Building, and instead proceeded to file an application for three dimensional variances from the sight distance requirements in Section 803.C of the Scranton zoning ordinance. As a consequence, only the ZHB's denial of the University's dimensional variance request, not the zoning officer's failure to issue a permit under Section 806.C.1(a), is subject to review in this zoning appeal. (T.P. 8/5/13 at pp. 33, 35-38).

## (C) DIMENSIONAL VARIANCE

---

3. In its brief, the ZHB hypothesizes that "[t]he Zoning Officer must have found the reconstruction of the nonconforming structure would increase severity or amount of the nonconformity or he would have permitted the new structure without Board approval." (Docket entry no. 4 at pp. 3-4). There is no factual or evidentiary support in the record for such an assumption, and neither the zoning hearing transcript nor the ZHB's written decision references a supposed determination by the zoning officer or any other municipal official that the proposed construction of the new Rehabilitation Center would increase the existing nonconformity. In fact, the only testimony presented on that issue confirmed that the dimensional footprint of the proposed structure "is actually better than the footprint of the existing building" and reduces "the severity of the present nonconformity." (ZHT 6/12/13 at pp.13, 15).

"The five factors an applicant generally must demonstrate to establish entitlement to a use or dimensional variance are set forth in Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC) Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10910.2," *Schomaker*, 994 A.2d at 1199, and the variance criteria set forth in Section 111.E.3(b) of the Scranton zoning ordinance mirror the standards contained in Section 910.2 of the MPC. *See TKO Realty, LLC, supra*, at *4-5. Generally, a landowner seeking a variance "must establish that the zoning ordinance imposes unnecessary hardship resulting from unique physical conditions of the property; a variance is necessary to enable a reasonable use of the property; the asserted hardship was not self-inflicted; a grant of variance will not alter the essential character of the neighborhood, substantially impair appropriate use or development of adjacent properties, or be detrimental to the public welfare; and, the requested variance represents a minimum variance and a least possible modification of the regulation that will afford relief." *Bernotas, supra*, at *4 (citing 53 P.S. §10910.2).

It is important to note that the University requested a dimensional variance, rather than a use variance. "By applying for a 'use' variance, a property owner seeks permission to devote the property to a particular use that is prohibited by the zoning ordinance (e.g., a commercial use in a residential zone)." *McHale v. Board of Zoning Appeals for City of Scranton*, 99 Lacka. Jur. 117, 122 (1998). In contrast, "[a] dimensional variance seeks relief

from zoning requirements governing lot size, open area, setback, sight distance or yard requirements." *Id.* at 123.

In *Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43 (1998), the Supreme Court of Pennsylvania adopted a less demanding standard for the issuance of a dimensional variance. The Supreme Court stated that "[w]hen seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations." *Hertzberg, supra*; *Bernotas, supra*; *Schomaker*, 994 A.2d at 1200. Therefore, "the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation." *Hertzberg, supra*; *Vaughn v. Zoning Hearing Board of Township of Shaler*, 947 A.2d 218, 222 n. 7 (Pa. Cmwlth. 2008). As a result, "the quantum of proof required to establish unnecessary hardship is indeed lesser when a dimensional variance, as opposed to a use variance, is sought." *Hertzberg*, 554 Pa. at 259-260, 721 A.2d at 47-48. *Accord Appeal of Towamencin Township*, 42 A.3d at 370 ("In *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, our Supreme Court explained that when the application is for a dimensional rather than a use variance, the analysis of what constitutes unreasonable hardship... allows for a lesser quantum of proof."). In determining whether the applicant has established the requisite unnecessary hardship for the issuance of a dimensional variance, "courts may consider multiple factors, including

the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." *Hertzberg*, 554 Pa. at 264, 721 A.2d at 50; *Bernotas, supra,* at *4; *Mitchell v. The Zoning Hearing Board of the Borough of Mount Penn*, 838 A.2d 819, 828 (Pa. Cmwlth. 2003).

Accordingly, "the ZHB may grant a variance, provided that the applicant has shown that compliance with the ordinance in question would work an unnecessary hardship upon the applicant and that the proposed use would not be contrary to the public interest." *Appeal of Towamencin Township*, 42 A.3d 366, 370 (Pa. Cmwlth. 2012). Although section 111.E.3(b) of the Scranton zoning ordinance likewise requires an applicant for a variance to establish "unnecessary hardship" as a result of the property's unique physical circumstances which prohibit its development in strict conformity with the zoning ordinance, the ZHB did not reject the University's request for dimensional variances based upon a purported failure to demonstrate the requisite "unnecessary hardship" under the MPC or the zoning ordinance. Rather, the ZHB denied the University's application for three sight distance variances on the sole ground "that the proposed new building would increase the student traffic at the intersection, thus making it less safe for both the students and the oncoming traffic." (Docket entry no. 4 at p. 3). At the time of the hearing on August 5, 2013, the ZHB's solicitor agreed that the only reason proffered by the ZHB for denying the University's

requested zoning relief was that the grant of a variance was "contrary to the public interest" due to the expressed safety issues, not because of the University's failure to establish "unnecessary hardship,"[4] (T.P. 8/5/13 at pp. 43-44). As a result, the narrow issue to be decided in this appeal is whether the ZHB abused its discretion by ostensibly finding that the University's construction of a new Rehabilitation Center Building will adversely affect the safety of motorists and pedestrians traversing the intersection of Linden Street and Jefferson Avenue.

In order to deny various forms of zoning relief to landowners based upon traffic safety concerns, a certain quantum and character of proof is required. "Proof of adverse traffic effects usually requires a mixture of proof in the form of traffic counts, accident records, and expert evidence." *Bailey v. Upper Southampton Township*, 690 A.2d 1324, 1327 (Pa. Cmwlth. 1997). *Accord In re Appeal of Brickstone Realty Corp.*, 789 A.2d 333, 342

---

4. The *Hertzberg* standard has been described as "a lesser burden of proof," *Kennedy v. Upper Milford Township Zoning Hearing Board*, 575 Pa. 105, 117 n. 16,834 A.2d 1104, 1111 n. 16 (2003), and "a more relaxed standard for a dimensional variance." *Bernotas, supra.* The less stringent test set forth in *Hertzberg* is not limited to cases where a dimensional variance is being sought for a building of the same size as the existing structure, and to the contrary, applies equally to variance requests seeking to add space to the present building. *Talkish v. Zoning Hearing Board of Harbor Creek Township*, 738 A.2d 50, 53 (Pa. Cmwlth. 1999), *app. dismissed*, 567 Pa. 513, 788 A.2d 955 (2001). The ZHB presumably applied the less demanding standard in *Hertzberg* since it did not conclude that the University neglected to establish "unnecessary hardship." *See Mitchell*, 838 A.2d at 829 (citing *Hertzberg* and concluding that "[w]here, as here, the evidence demonstrates that the only possible way of strictly complying with the [dimensional] requirement is through extensive reconstruction...of the building at a very high cost rendering it economically infeasible, unnecessary hardship for justifying a dimensional variance is shown.").

(Pa. Cmwlth. 2001) ("Proof of abnormal and hazardous traffic effects would usually require evidence in the form of traffic counts, accident records, and expert evidence."), *app. denied*, 569 Pa. 723, 806 A.2d 863 (2002). Subjective lay opinion or testimony concerning increased traffic and prospective safety issues is insufficient to support a zoning hearing board's finding of adverse traffic effects. *See In re Appeal of Brickstone Realty Corp., supra* (holding that zoning board abused its discretion by denying developers' request for special land use exception based upon a finding of heightened traffic problems since the objectors "were required to produce more than lay expressions of concern for increased traffic in an already busy area."); *Bailey, supra* (concluding that "the Board's finding that the proposed expansion will increase traffic is not supported by substantial evidence of record" since "[t]here is absolutely no evidence other than the speculative testimony of the neighbors that there will be an increase in traffic congestion."). Absent such expert evidence and accident records proof, a zoning hearing board generally may not deny zoning relief due to traffic safety issues. *See, e.g., Borough of Perkasie v. Moulton Builders, Inc.*, 850 A.2d 778, 782-783 (Pa. Cmwlth. 2004) (reversing denial of application for conditional use permit based upon adverse traffic effects, and holding that the local agency abused its discretion since "the record contains no opposing evidence in the form of traffic counts, accident records and expert evidence to establish that the use and location will have an adverse effect on traffic."); *Arduino v. Zoning Hearing Board of Borough of Dunmore*, 2005 WL 4124885, at *12 (Lacka. Co. 2005) (without supporting expert testimony

stating that the access drive's sight distances presented a safety hazard, the record cannot contain evidence which a reasonable mind might accept as adequate to support the conclusion that a five foot deficiency in the left sight distance constituted a public safety threat); *Carmadella v. Borough of Old Forge*, 101 Lacka. Jur. 14, 21 (1999) (inasmuch as the objectors "failed to offer any traffic records or expert evidence to substantiate their arguments regarding traffic..., the record is completely devoid of substantial evidence to support the neighbors' traffic concerns.").

The recent Commonwealth Court decision in *In re Jones*, 29 A.3d 60 (Pa. Cmwlth. 2011) is rather instructive in this regard. In that case, a property owner requested a zoning variance to use his private residence as an insurance agency business, and during the ensuing zoning board hearing, several neighbors testified and objected to the variance request based upon "concerns about increased traffic, risks to children who live in the area," "dangerous sight lines" at the intersection involved, and several "traffic accidents [that] recently took place" at that intersection. *Id.* at 62. The zoning board denied the variance application after finding that traffic and safety issues at the subject intersection "would be exacerbated by the proposed use." *Id.*

The property owner appealed and argued "that the ZHB erred or abused its discretion by denying his request for a use variance based solely upon its finding that the proposed use would exacerbate traffic problems." *Id.* at 63. The property owner asserted that the objectors' "testimony

regarding safety and traffic problems in the vicinity of the Property is mere speculation and conjecture and thus does not constitute evidence that is competent to support the ZHB's findings." *Id.* The Commonwealth Court agreed, and in reversing the ZHB's denial, reasoned:

Objectors' testimony does not demonstrate specific adverse effects that Jones' proposed use will have on the neighborhood or that a significant increase in neighborhood traffic will result from the proposed use. We also observe that Objectors' testimony is not augmented by expert opinions, traffic studies, or accident reports demonstrating any adverse effect of the proposed use on the neighborhood. For these reasons, Objectors' testimony is not sufficient to support the ZHB's finding that traffic and safety problems would be exacerbated by Jones' proposed insurance agency use.[footnote omitted].

Because the ZHB's decision to deny the variance due to an exacerbation of traffic and safety problems is unsupported by substantial evidence, we conclude that the ZHB abused its discretion by denying Jones' application for a variance. Accordingly, we reverse.

*Id.* at 65.

The evidence of traffic congestion and safety issues in the case *sub judice* is far less than the traffic hazards proof that was deemed inadequate as a matter of law in *In re Jones.* In the pending zoning matter, the University introduced the only expert evidence concerning traffic issues, and that professional engineer testified that

the proposed construction will "slightly improve" the existing sight distance triangles and will permit traffic to safely travel through the intersection of Linden Street and Jefferson Avenue. The University also presented the only accident records evidence which revealed the absence of any vehicle accidents at that intersection within the past five years. *See In re Jones*, 29 A.3d at 63 n. 5 ("The burden is on the property owner to establish why he or she is entitled to a variance."). Furthermore, unlike *In re Jones* where objectors offered lay testimony relating to traffic congestion, pedestrian risks, dangerous sight lines and prior accidents, no individual testified in opposition to the University's application or otherwise alleged that the new Rehabilitation Center Building would make "it less safe for both the students and the oncoming traffic" to use the intersection.

Zoning hearing boards have broad discretion in assessing the credibility of witnesses and the weight to be afforded their testimony, *Oxford Corp. v. Zoning Hearing Bd. of Borough of Oxford*, 34A.3d 286, 295 n. 9 (Pa. Cmwlth. 2011), but their discretion is circumscribed by the requirement that their findings must be "supported by substantial evidence," which is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Geryville Materials, Inc. v. Planning Commission of Lower Milford Township*, 2013 WL 3889211, at *2 n. 5 (Pa. Cmwlth. 2013). In the face of undisputed expert testimony that the proposed construction will not increase the existing, nonconforming sight distance triangles or cause any traffic safety issues, which expert

proof was actually cited in the ZHB's findings of fact Nos. 5 and 6, the ZHB denied the University's dimensional variance request on the singular ground that the new Rehabilitation Center Building will make "it less safe" for motorists and pedestrians to utilize the intersection. The zoning hearing transcript does not contain any expert testimony, accident records analysis, or traffic count study to support that traffic and pedestrian safety finding. At the time of oral argument, the ZHB conceded that "the record is obviously devoid of any of that evidence." (T.P. 8/5/13 at p. 48). As such, the ZHB's determination that the proposed construction will jeopardize the safety of motorists and student pedestrians is not substantiated by the requisite proof. *See In re Jones, supra; Bailey, supra.*

Therefore, the ZHB's traffic safety finding, which served as the only basis for its denial of the University's dimensional variance application, is "not supported by substantial evidence in the record." *See Keener v. Rapho Township Zoning Hearing Board*, 2013 WL 3929834, at*5 n. 8 (Pa. Cmwlth. 2013) (a zoning board abuses its discretion when its findings are not supported by substantial evidence in the record). Consequently, the ZHB abused its discretion by denying the University's application for dimensional variances for three sight distance triangles, and the ZHB's majority decision will therefore be reversed.

## ORDER

And now, this 9th day of August, 2013, upon consideration of the "Notice of Zoning Appeal" filed by

appellant, the University of Scranton, on July 3, 2013, the transcript of the Scranton City zoning hearing conducted on June 12, 2013, the memoranda of law submitted by the parties, and the oral argument of counsel on August 5, 2013, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

1. The zoning appeal filed by appellant, the University of Scranton, is granted; and

2. The decision of the Zoning Hearing Board of the City of Scranton denying the University of Scranton's application for three dimensional variances with respect to the "sight distance triangle" requirements of Article VIII, Section 803.C.5 of the City of Scranton Zoning Ordinance is reversed.