**PENNSY SUPPLY, INC., Appellant**

v.

**ZONING HEARING BOARD OF DORRANCE TOWNSHIP, Margaret A. Cybulski, n/k/a Margaret A. Lenahan, n/k/a Margaret Lenahan and Kevin G. Casey.**

Commonwealth Court of Pennsylvania.

Argued Nov. 10, 2009.

Decided Dec. 22, 2009.

Reargument Denied Feb. 18, 2010.

---

George Asimos, Wayne, for appellant.

Richard M. Hughes, III, Kingston, for appellee, Zoning Hearing Board of Dorrance Township.

William L. Higgs, Mountain Top, for appellee, Margaret A. Cybulski.

BEFORE: SIMPSON, Judge, and BUTLER, Judge, and QUIGLEY, Senior Judge.

OPINION BY Judge BUTLER.

Pennsy Supply, Inc. (Pennsy) appeals from the June 26, 2008 order of the Court of Common Pleas of Luzerne County (trial court) denying its appeal from the July 19, 2007 decision of the Zoning Hearing Board of Dorrance Township (ZHB) which denied Pennsy's application for special exception, variances and certain of its challenges to the validity of zoning ordinances related to the expansion of its quarry in Dorrance Township (Township). The issues before this Court for consideration are:[1] (1) whether the ZHB failed to make findings of fact and conclusions of law in accordance with Section 908(9) of the Pennsylvania Municipalities Planning Code (MPC);[2] (2) whether the burden of proof used by the ZHB and the trial court was in error; (3) whether the trial court erred when it imposed upon Pennsy the burden of proof set forth in *Butler v. Derr Flooring Co.*, 4 Pa.Cmwlth. 341, 285 A.2d 538 (1971); (4) whether the ZHB capriciously disregarded Pennsy's evidence as to whether expansion of the quarry would adversely affect the health, safety and welfare of the community; (5) whether the

ZHB erred in finding that Sections 2.05113, 2.05122 and 2.05124 of the Zoning Ordinance of Dorrance Township, Pennsylvania (1982) (Zoning Ordinance)[3] applied to Pennsy's application; and, (6) whether the ZHB erred in denying as moot Pennsy's requested variances. For the reasons stated below, we affirm the decision of the trial court.

Pennsy owns a 246-acre parcel of land (Property) along the south side of Small Mountain Road in the Township, in an area zoned M-2 (light industrial) and M-3 (heavy industrial). The Property currently contains a hot mix asphalt plant and a ready mix concrete plant, and Pennsy uses it to store stone and similar materials it uses for its road construction business. For over 18 years, Pennsy has operated a quarry on 128 acres it also owns on the north side of Small Mountain Road. Pennsy estimates, however, that the amount of useable stone in the existing quarry will be depleted in two to three years, and the 150 people it employs will then be without jobs.

On December 7, 2006, Pennsy filed an application with the ZHB seeking a special exception and variances associated therewith, and challenging the validity of certain of the Township's ordinances, in order to expand its existing quarry operation to excavate the Property on the south side of Small Mountain Road. The Property is surrounded on the east by Interstate 81, on the south by two business properties and several residences, on the west by

---

1. Several of the specific issues posed by Pennsy have been combined and addressed together, where reasonable, in order to reduce repetition in this opinion.

2. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10908(9).

3. The Zoning Ordinance of Dorrance Township, Pennsylvania, in effect since 1982 was amended in its entirety on or about January 8,

2007, one month after Pennsy's application was filed. Pennsy Br. at 5 n. 1. Section 917 of the MPC, added by Section 22 of the Act of June 23, 2000, P.L. 495, 53 P.S. § 10917, entitles Pennsy to a review and decision on its application in accordance with the zoning ordinance in effect at the time its application was filed. Thus, this decision is based upon the 1982 version of the Township's zoning ordinance.

forested area, and on the north by Pennsy's existing quarry. The excavation will take place at least 1,295 feet from the nearest residence, and approximately 850 feet from the nearest business. Pennsy proposes to operate primary and secondary crushers, a motor control center and approximately six conveyors on the Property in the area of the excavation. The equipment, which will not exceed 50 feet in height, will be located at least 1,000 feet from the nearest offsite commercial building, and 1,900 feet from the nearest residence. A conveyor is proposed to span South Mountain Road at a height of at least 20 feet for the purpose of transporting processed materials from the south side to the finished processing plant on the north side, in order to eliminate the need for excess truck traffic and/or processing equipment.

On July 19, 2007, after conducting numerous hearings at which a number of individual property owners testified in opposition (objectors), the ZHB issued a decision denying Pennsy's application. On August 17, 2007, Pennsy appealed the ZHB's decision to the trial court.[4] On March 20, 2008, the trial court, upon stipulation by the parties, ordered that Margaret A. Cybulski n/k/a Margaret A. Lenahan n/k/a Margaret Lenahan and Kevin G. Casey (Intervenors) shall be intervenors in this action. On June 26, 2008, the trial court denied Pennsy's appeal. On July 22, 2008, Pennsy filed an Application for Reconsideration, which was denied by the trial court. On July 17, 2008, Pennsy filed an appeal to this Court.[5]

*THE ZHB MADE SUFFICIENT FINDINGS OF FACT AND CONCLUSIONS OF LAW IN ACCORDANCE WITH THE MPC:*

 Pennsy first argues on appeal that the ZHB erred by broadly concluding that the objectors met their burden of proving that granting Pennsy's request for special exception would be detrimental to the health, safety and general welfare of the community, rather than making essential findings of fact and conclusions of law in accordance with Section 908(9) of the MPC. We disagree. Section 908(9) of the MPC provides, in pertinent part, that the ZHB "shall render a written decision ... [and, w]here the application is ... denied, each decision shall be accompanied by findings of fact and conclusions based thereon together with the reasons therefor." This is "to show that [the ZHB's] decision was reasoned and not arbitrary." *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 816 (Pa.Cmwlth.2005). "[T]here is no requirement that [the ZHB] cite specific evidence in support of each of its findings." *Id.* So long as its decision "is clear and substantially reflects application of the law governing variances[, it] is sufficient to enable effective review." *Id.* Moreover, "[d]eterminations as to the credibility of witnesses and the weight to be given to evidence are matters left solely to the [ZHB] in the performance of its factfinding role." *Borough of Youngsville v. Zoning Hearing Bd. of Borough of Youngsville*, 69 Pa.Cmwlth. 282, 450 A.2d 1086, 1089 (1982).

In addition to its decision on Pennsy's application, the ZHB issued 32 findings of fact and six conclusions of law, which spe-

**4.** On October 10, 2007, following its receipt of the ZHB's findings of fact and conclusions of law, Pennsy filed an Amended Notice of Land Use Appeal with the trial court.

**5.** "When no additional evidence is taken following the determination of a zoning hearing

board, [this C]ourt's scope of review is limited to determining whether the zoning board committed an error of law or a manifest abuse of discretion in rendering its decision." *Cottone v. Zoning Hearing Bd. of Polk Twp.*, 954 A.2d 1271, 1275 n. 2 (Pa.Cmwlth.2008).

cifically identified each of Pennsy's requests, identified each witness, their area of expertise, what they did relative to Pennsy's application, and certain details concerning their testimony, then stated for each that he was subject to cross-examination, and that his testimony is accurately reflected in the record. ZHB's Findings of Fact and Conclusions of Law (FOF) ¶¶ 20, 23–29, 31. Relative to the witnesses in opposition to Pennsy's application, the ZHB acknowledged their very detailed testimony in the record as to the impact the proposed quarry expansion would have on their individual lives, and its impact on the health, the environment, noise, water quality and the safety of the community at large. FOF ¶ 30. In its Conclusions of Law, the ZHB set forth the burdens to be met by the parties, declared that Pennsy met its burden, thereby shifting the burden to the objectors who "met said burden," then denied Pennsy's request for special exception. FOF ¶ 33. The trial court stated that "the Findings of Fact and Conclusions of Law provided by the [ZHB] were sufficient to provide [Pennsy] with the basis for its Decision." *Pennsy Supply, Inc. v. Zoning Hearing Bd. of Dorrance Twp.* (No. 9435 of 2007, filed September 15, 2008), slip op. at 4.

The ZHB's decision clearly reflects that it heard and considered all of the evidence presented, and found that, while both parties met their burden, the objectors' testimony was more compelling. The ZHB's numerous findings of fact and conclusions of law satisfy the requirements of the MPC, thereby providing for meaningful judicial review. Because there was sufficient information to support a conclusion that the ZHB's findings were reasoned and not arbitrary, we hold that the ZHB made essential findings of fact and conclusions based thereon, together with reasons therefore, in accordance with Section 908(9) of the MPC.

*The ZHB did not err in concluding that objectors met their burden of proof:*

■ Next, Pennsy argues that the ZHB and the trial court erred by not requiring the objectors to prove that granting Pennsy's application for special exception would be detrimental to the health, safety and welfare "to a high degree of probability" and, as a result, the ZHB abused its discretion because there was not sufficient evidence to support its denial of Pennsy's application. Pennsy Br. at 22, 25. Again, we find no error on the part of the ZHB.

■ "An abuse of discretion will be found only where the [ZHB's] findings are not supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cottone v. Zoning Hearing Bd. of Polk Twp.*, 954 A.2d 1271, 1275 n. 2 (Pa.Cmwlth.2008) (citation omitted). Pennsy sought a special exception under Section 2.051 of the Township's Zoning Ordinance, which permits new excavations of minerals and rock in heavy industrial districts, with the ZHB's approval, subject to certain conditions. Zoning Ordinance Section 2.051. A special exception is a conditionally permitted use, legislatively allowed, so long as a zoning hearing board finds that the standards and conditions set forth in the ordinance are met. *Bray v. Zoning Bd. of Adjustment*, 48 Pa.Cmwlth. 523, 410 A.2d 909 (1980).

> [It] is not an 'exception' to the zoning ordinance; rather, it is a use permitted in accordance with the express standards and criteria in the zoning ordinance. The applicant has the burden of proving: (1) that the proposed use is a type permitted by special exception and (2) that the proposed use complies with the requirements in the ordinance for such a special exception. It is presumed that the local legislature has considered

that the special exception use satisfies local concerns for the general health, safety, and welfare. Accordingly, once an applicant for a special exception shows compliance with the specific requirements of the ordinance, the burden shifts to the protestors to prove that the proposed use will have an adverse effect on the general public.

*Agnew v. Bushkill Twp. Zoning Hearing Bd.*, 837 A.2d 634, 637 (Pa.Cmwlth.2003) (citations omitted). This Court has established that: "objectors have the burden of production, as well as the burden of persuasion, where the statute does not ... provide otherwise, of establishing the existence of non-specific criteria, such as detriment to the public health, safety, or welfare, which would preclude the granting of a special exception." *Tuckfelt v. Zoning Bd. of Adjustment of City of Pittsburgh*, 80 Pa.Cmwlth. 496, 471 A.2d 1311, 1314 (1984) (citations omitted). "The objectors cannot meet their burden by merely speculating as to possible harm, but instead must show a high degree of probability that it will substantially affect the health and safety of the community." *Rural Area Concerned Citizens, Inc. v. Fayette County Zoning Hearing Bd.*, 166 Pa. Cmwlth. 520, 646 A.2d 717, 722 (1994).

In this case, the objectors raised several issues concerning the detriment Pennsy's proposed expansion would have on them and their community. Specifically, they presented evidence, subject to Pennsy's cross-examination, about the impact current blasting operations have on their residential wells, and the quality of their water as a result of the blasting. Reproduced Record (R.R.) at 1040a–1042a, 1512a. They also testified about the noise from blasting, how the accompanying dust and vibrations affect their quality of life. R.R. at 771a, 775a–778a, 1043a–1044a, 1052a–1053a, 1262a–1263a. One objector discussed the negative impact the quarry has had on her property value. R.R. at 1263a.

Others related that the Balliet Run stream has been destroyed by sediment from the quarry. R.R. at 567a, 592a, 1077a–1078a, 1370a–1376a, 1380a–1381a. They discussed that sediment and water is discharging from the quarry onto their properties due to the lack of monitoring and control by Pennsy. R.R. at 569a, 581a, 628a–630a, 688a–689a, 1380a–1381a. The objectors testified that the quarry's current operations have had a negative impact on local agriculture and local wildlife. R.R. at 595a–596a, 613a–617a.

■■■ Pennsy characterizes the testimony of the objectors as speculative, since they are not experts on the subject matter about which they testified, and they did not verify their experiences with objective tests. Certainly, if Pennsy's special exception was for a new use, the objectors' testimony would be more likely to be speculative, and demonstrating detriment to a high degree of probability would be more difficult. As we see it, however, the objectors' testimony can hardly be considered speculative when it was based upon the experiences they have had with Pennsy's current operations. Thus, under the circumstances, demonstrating a detriment to the community to a high degree of probability is a much easier task. Moreover, the mere fact that the objectors are lay witnesses does not make their testimony less valuable than the "expert" evidence proffered by Pennsy. *See Borger v. Towamensing Twp. Zoning Bd. of Adjustment*, 39 Pa.Cmwlth. 361, 395 A.2d 658 (1978).

■■■ Finally, "[i]t is the duty of the zoning board in the exercise of its discretionary power to determine whether a party has met its burden of proof." *Shamah v. Hellam Twp. Zoning Hearing Bd.*, 167 Pa.Cmwlth. 610, 648 A.2d 1299, 1304 (1994). "Determinations as to the credibility of witnesses and the weight to be given to the evidence are matters left solely to

the Board in the performance of its fact-finding role." *Id.* The ZHB here concluded that Pennsy satisfied its burden of proving that its proposed use is permitted by special exception and that it complies with the requirements in the ordinance for such a special exception. The burden then shifted to the objectors to show that the proposed use would have an adverse effect on the health, safety and welfare of the Township's residents. Based upon the testimony presented by the objectors about the negative impact of the proposed expansion of the stone quarry on their individual lives, and the impact on health, the environment, noise, water quality and the safety of the community at large, the ZHB found that the objectors, likewise, met their burden. While the ZHB did not use the words "high degree of probability," it found that the objectors' testimony was not based merely upon speculation, and was sufficiently persuasive. The trial court, likewise, found "that the Objectors sustained their burden of establishing that the expansion of the quarry was injurious to the public health, safety and welfare." *Pennsy Supply, Inc. v. Zoning Hearing Bd. of Dorrance Twp.* (No. 9435 of 2007, filed September 15, 2008), slip op. at 7. We hold that substantial evidence supports the ZHB's conclusion that objectors satisfied their burden of proof.

*THE TRIAL COURT COMMITTED HARMLESS ERROR IN ITS BURDEN OF PROOF ANALYSIS:*

 Next, Pennsy argues that the trial court erred when it imposed upon Pennsy the burden-shifting rule set forth in *Derr Flooring.* In its June 26, 2008 opinion, the trial court cited *Derr Flooring* for the proposition that once opponents to a special exception raise concerns related to the health, safety and general welfare, "the burden shifts back to [Pennsy] to show that that intended use would not violate such concerns." *Pennsy Supply, Inc. v. Zoning Hearing Bd. of Dorrance Twp.*

(No. 9435 of 2007, filed June 26, 2008), slip op. at 4. The trial court's characterization of the re-shifting burden is clearly contrary to the case law cited previously regarding the burden to be applied in this case. Notably, in its Opinion Pursuant to Pa.R.A.P.1925(a), filed September 15, 2008, the trial court did not reiterate this burden re-shifting rule.

This Court has recognized, however, that there are circumstances in which the burden of persuasion as to the health, safety and general welfare of the community is placed upon an applicant, such as when zoning ordinances specifically place that burden upon an applicant. *See Bray.* In *Derr Flooring,* Whitemarsh Township's zoning ordinance clearly stated that "the burden shall be upon the applicant to prove that approval of the application will not be detrimental to the health, safety and general welfare of the community." *Derr Flooring,* 285 A.2d at 542. There is no such language in the Township's Zoning Ordinance in this case. Since the burden-shifting rule set forth in *Derr Flooring* is inapplicable to this case, the trial court erred in applying it to Pennsy. We hold, however, that the trial court's reference to *Derr Flooring* in its original opinion was harmless error since the trial court affirmed the ZHB's decision that applied the appropriate burden of proof, and the error had no affect on the outcome of this case.

*THE ZHB DID NOT CAPRICIOUSLY DISREGARD PENNSY'S EVIDENCE.*

 Next, Pennsy argues that the ZHB capriciously disregarded the testimony of its witnesses and its documentary evidence that its request for special exception would not adversely affect the health, safety and welfare of the community. We disagree. "Appellate review of zoning matters includes review for capricious disregard of evidence." *Hellam Twp. v. Hellam Twp. Zoning Hearing Bd.,* 941 A.2d

746, 750 (Pa.Cmwlth.2008). According to the Pennsylvania Supreme Court:

> 'capricious disregard' of the evidence ... exist[s] 'when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result.' Furthermore, under the capricious disregard standard, the agency's determination is given great deference, and relief will be rarely warranted. Under this standard, an appellate tribunal is not to substitute its judgment for that of the lower tribunal and the standard 'is not to be applied in such a manner as would intrude upon the agency's fact-finding role and discretionary decision-making authority.'

*Riverwalk Casino, LP v. Pennsylvania Gaming Control Bd.*, 592 Pa. 505, 510–511, 926 A.2d 926, 929–30 (2007) (citations omitted). "When substantial evidence supports the findings and the findings in turn support the conclusion, it remains a rare instance where an appellate court disturbs an adjudication based on capricious disregard." *Hellam Twp.*, 941 A.2d at 750. Moreover, this Court has held that, "[b]y definition, the express consideration and rejection of ... evidence does not amount to capricious disregard." *Id.*

In this case, the ZHB, in its Findings of Fact and Conclusions of Law, specifically identified each of Pennsy's requests, identified all of the witnesses, their area of expertise, what they did relative to Pennsy's application, and certain details concerning their testimony, then stated that they were subject to cross-examination, and their testimony is accurately reflected in the record. FOF ¶¶ 20, 23–29, 31. In its brief, Pennsy even acknowledged that the ZHB "referenc[ed] the subject matter of each of Pennsy's expert witnesses." Pennsy Br. at 17. The ZHB also specifically acknowledged Pennsy's documentary evidence. FOF ¶ 29. It is clear that the ZHB considered Pennsy's evidence, but found other evidence more compelling. Since there was no willful and deliberate disregard of competent testimony and relevant evidence by the ZHB in this case, and in light of the deference afforded the ZHB's conclusions, we hold that the ZHB did not capriciously disregard Pennsy's evidence, and the trial court properly upheld the ZHB's decision.

*ZHB's FINDINGS AS TO THE APPLICABILITY OF THE ZONING ORDINANCE:*

Next, Pennsy argues that the ZHB erred in finding that Sections 2.05113, 2.05122 and 2.05124 of the Zoning Ordinance apply to Pennsy's application. We agree with Pennsy's interpretation that Section 2.05122 of the Zoning Ordinance does not apply to Pennsy's application, but disagree that the ZHB improperly applied Sections 2.05113 and 2.05124.

 Initially, we must note that:

> a ZHB is the entity responsible for the interpretation and application of its zoning ordinance, and its interpretation of its own ordinance is entitled to great deference from a reviewing court. The basis for the judicial deference is the knowledge and expertise a ZHB possesses to interpret the ordinance it is charged with administering.

*Pietropaolo v. Zoning Hearing Bd. of Lower Merion Twp.*, 979 A.2d 969, 976 (Pa.Cmwlth.2009) (citation omitted). Here, Pennsy's application challenged the applicability of Section 2.05122 of the Zoning Ordinance, which states:

> After excavations are completed, the slopes of the edge of the excavated area of sand and gravel pits and peat bogs shall not be steeper than one foot of vertical distance for each one and one-half feet of horizontal distance. The surface of the area excavated shall be

leveled, and grained to the extent feasible.

Pennsy argues that, since Section 2.05122 applies to sand, gravel pits and peat bogs, rather than quarry operations, it is not applicable to Pennsy's application. The ZHB concedes this point, and we agree. The ZHB, therefore, improperly applied Section 2.05122 of the Zoning Ordinance to Pennsy's application. This constitutes harmless error, however, since Pennsy's application was ultimately denied.

■ The ZHB properly applied Sections 2.05113 and 2.05124 of the Zoning Ordinance to Pennsy's application. Section 2.05113 is a subsection of Section 2.051 of the Township's Zoning Ordinance requiring for "all excavations conducted" in the Township that the perimeter "not be nearer than 200 feet from any building or road, including that owned by the excavator, or 100 feet from any, or any other, public or semi-public use." Zoning Ordinance at 15. Section 2.05124, likewise a subsection of Section 2.051, requires that specifically "in the case of quarries ... [t]he perimeter of any excavation ... shall not be nearer than 200 feet ... from any building or road, including that owned by the excavator, or 100 feet from any, or any other, public or semi-public use." Zoning Ordinance at 17.

■ Pennsy argues that, since Section 2.05113 refers to "excavation" and is listed with other sections that appear to apply only to strip mining, it should not be applied to its application. Pennsy cites the Statutory Construction Act of 1972 [6] in support of its argument. While the Statutory Construction Act of 1972 "does not apply expressly to zoning and subdivision ordinances, the principles contained in that act are followed in construing a local ordinance.... In interpreting provisions of a zoning ordinance, undefined terms must be given their plain, ordinary meaning...." *Kissell v. Ferguson Twp. Zoning Hearing Bd.*, 729 A.2d 194, 197 (Pa.Cmwlth.1999) (citations omitted). When construing provisions of the township's zoning ordinance, this Court uses dictionaries to determine the common and approved usage of a term. *Id.* "Excavation" is defined as "the action or process of excavating." *Merriam Webster's Collegiate Dictionary* 403 (10th ed. 1997). "Excavating" is the formation of a cavity or hole. *Id.* A "quarry" is "an open excavation usu. for obtaining building stone, slate or limestone." *Id.* at 956. Given that both Sections 2.05113 and 2.05124 are subsections of Article 2 of the Zoning Ordinance under the general heading of "Excavation of Sand, Gravel and Top Soil, Coal or Other Minerals and Rock and Peat Moss, for Sale," and quarrying is done by the excavation of rock, the ZHB properly held that both of those sections are applicable to Pennsy's application.

■ Pennsy also argues that the Noncoal Surface Mining Conservation and Reclamation Act ("Noncoal Surface Mining Act") [7] supersedes or preempts Sections 2.05113 and 2.05124 of the Zoning Ordinance insofar as they impose setbacks on Pennsy's property, so they are invalid. We disagree. The Noncoal Surface Mining Act: "was passed to address the negative affects of surface mining by improving conservation of the land, protecting the health and safety of citizens and wildlife, and limiting pollution." *Tinicum Twp. v. Delaware Valley Concrete, Inc.*, 812 A.2d 758, 760 n. 4 (Pa.Cmwlth.2002). Section 16 of the Noncoal Surface Mining Act, 52 P.S. § 3316, states that it supersedes "all local ordinances and enactments purporting to regulate surface mining" and "preempts the regulation of surface mining" in the

---

6. 1 Pa.C.S. §§ 1501–1991.

7. Act of December 19, 1984, P.L. 1093, *as amended,* 52 P.S. §§ 3301–3326.

Commonwealth, "[e]xcept with respect to ordinances adopted pursuant to [the MPC]." Where a township has enacted an ordinance pursuant to the MPC prior to the effective date of the Noncoal Surface Mining Act, the Noncoal Surface Mining Act does not supersede or preempt the ordinance. *Warner Co. v. Zoning Hearing Bd. of Tredyffrin Twp.*, 148 Pa.Cmwlth. 609, 612 A.2d 578 (1992). Such is the case here.

■■ According to Section 1 of the Noncoal Surface Mining Act, 52 P.S. § 3301, that Act became effective on February 17, 1985. According to the record, the Township's Zoning Ordinance, including Sections 2.05113 and 2.05124, were enacted on October 4, 1982.[8] Zoning Ordinance at 35. Thus, the Zoning Ordinances were in effect long before the Noncoal Surface Mining Act became effective. Moreover, this Court has held that setback requirements for quarry operations, like those imposed here, are traditional land use regulations that are not preempted by the Noncoal Surface Mining Act. *See Tinicum Twp.; Warner Co.* Thus, whether the setbacks in Sections 2.05113 and 2.05124 of the Zoning Ordinance were intended to restrict quarrying on or off Pennsy's site, they were not superseded or preempted by the Noncoal Surface Mining Act. Therefore, the ZHB did not err in determining that Sections 2.05113 and 2.05124 of the Zoning Ordinance are valid.

*THE ZHB COMMITTED NO ERROR IN DENYING THE REQUESTED VARIANCES AS MOOT:*

Finally, Pennsy argues that the ZHB erred by denying Pennsy's requests for variances as moot without making a determination as to the requested relief. We disagree. In its application, Pennsy sought a variance from Section 2.05125 of the Zoning Ordinance (relating to location of processing equipment), so it could have certain conveying equipment located close to a public highway. R.R. at 23a, 27a. To the extent that the processing equipment to be installed in relation to the new quarry operation is considered a "building," Pennsy requested a variance from the height limitations set forth in Article 5 of the Zoning Ordinance. R.R. at 23a, 27a. Further, to the extent that is it not declared invalid, Pennsy requested a variance from Section 2.05114 of the Zoning Ordinance (relating to hours of operation). R.R. at 23a, 27a.

■■ The ZHB addressed Pennsy's requests in its decision, stating that it "deems the request for said variance[s] to be moot and accordingly denies the same." ZHB Decision at ¶¶ 2–3, 14. Then, in its conclusions of law, it stated that "the request by Pennsy for certain variances, consistent with its expansion project, were deemed moot by the [ZHB] in that the request for special exception was denied." FOF ¶ 34. The trial court stated that, "[w]ithout the Special Exception, there was no need for the [ZHB] to consider Variances to put into effect the proposed expansion." 6/26/08 Slip Op. at 7. It is undeniable that Pennsy's need for the variances was ancillary to and dependent upon the grant of the special exception to expand its quarry operations. Once the ZHB denied Pennsy's application for special exception, the question of whether Pennsy should be granted the variances

---

8. On February 2, 1987, the Township adopted a fee/cost schedule, but all existing ordinances were reaffirmed and ratified. Zoning Ordinance at 1–2. Effective March 11, 1989, the Township amended Article 5 of the Zoning Ordinance (relating to minimum yard and lot sizes), but all other ordinances remained in effect. Zoning Ordinance at 35. The Zoning Ordinance was amended in its entirety on or about January 8, 2007, after Pennsy filed its application.

became moot, and there was no need for the ZHB to rule on them.

Based upon the foregoing, Pennsy's special exception was properly denied by the ZHB, and its decision should not be disturbed on appeal. Accordingly, the decision of the trial court is affirmed.

### ORDER

AND NOW, this 22nd day of December, 2009, the June 26, 2008 order of the Court of Common Pleas of Luzerne County is affirmed.