IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Plum Creek MHC, LLC,                        :
                       Appellant        :
                                             :
                  v.                     :   No. 1323 C.D. 2024
                                             :   Argued:  November 6, 2025
The Zoning Hearing Board of              :
The Borough of Plum                      :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER        FILED: December 8, 2025

Appellant Plum Creek MHC, LLC (Applicant) appeals from the Order of the Court of Common Pleas of Allegheny County (common pleas) dated August 29, 2024, affirming the decision of the Zoning Hearing Board of the Borough of Plum (ZHB), which denied Applicant's zoning application for a special exception to expand a manufactured home park (Application), which was a pre-existing, nonconforming use.  The ZHB denied the Application, finding that such expansion would be detrimental to the public health, safety, and welfare because the manufactured home park is located on a flood plain and the proposed expansion would exacerbate existing flood prone conditions.  Common pleas agreed, finding that the ZHB properly determined that Applicant did not satisfy the requisite burden for the requested special exception and, without taking additional evidence, affirmed

the ZHB. Upon careful review, we conclude that the ZHB did not commit an error of law or an abuse of discretion and, therefore, we affirm.

## I. BACKGROUND

This appeal concerns a manufactured home park located at 1741 Kirk Drive, Verona (Property), within Intervenor Plum Borough (Borough), zoned as single family residential under the Plum Borough Zoning Ordinance (Zoning Ordinance), PLUM BOROUGH ORDINANCE NO. 916-17 (2017), *as amended*. On August 14, 2023, Applicant submitted the Application, which included the Application Form and the Narrative describing the proposed expansion. (Reproduced Record (R.R.) at 247-49.)[1] Applicant sought to expand the Property by adding 23 additional manufactured home sites for a total of 61 sites,[2] upgrading the utility infrastructure, road, and lighting, and building a park management office, new recreation space, and stormwater detention facility. (ZHB Decision, Findings of Fact (FOF) ¶¶ 2, 4-5.) A large portion of the proposed project is located in a floodplain, which has experienced flood damage in the past. (ZHB Decision, Conclusion of Law (COL) ¶ 10.)

The ZHB held a hearing on the Application in September 2023. In support of the Application, Robbie Garippo, Applicant's representative, testified that the economic viability of the Property would fail without the requested special exception. (*Id.* ¶ 6.) On cross examination, Garippo admitted that despite owning

---

[1] The Reproduced Record does not comport with Pennsylvania Rule of Appellate Procedure 2173, Pa.R.A.P. 2173 (requiring that the pagination of reproduced records be in the form of an Arabic number followed by a small "a"). For ease, the Court will utilize the method used by the Reproduced Record.

[2] The ZHB Decision references both 21 and 23 additional sites, (ZHB Decision, FOF ¶¶ 2, 5), but at the hearing, Applicant represented it was 23 sites, (R.R. at 257).

20 manufactured housing communities nationwide, Applicant never previously purchased a property in a flood zone, relying on representations made by the previous owner regarding the viability of adding manufactured home sites, and that Applicant should have performed due diligence before purchasing the Property. (*Id.* ¶¶ 3, 7.) The ZHB expressly credited Garippo's testimony. (*Id.* ¶ 8.) In addition, Rob Urbanic (Urbanic), the boyfriend of the Property's manager, testified in support of the Application, stating, in his opinion, the proposed expansion would increase the tax revenue for the Borough. (*Id.* ¶ 10.) It is unclear if the ZHB credited Urbanic's testimony. Applicant also admitted exhibits during the hearing, including Applicant Exhibit B, which is a map of the Property outlining the proposed expansion and the flood zone. (R.R. at 362; Original Record (O.R.) at 364.)

The Borough opposed the Application and presented numerous witnesses. Annie Fox of the Allegheny County Conservation District testified that she had authored a report in 2020 recommending that the previous owner of the Property remove illegally dumped materials and stabilize the stream bank. (FOF ¶¶ 13-14.)[3] Donald Housley, Sr. of KU Resources, a consultant hired by the Borough, testified that the Application was deficient in multiple areas, including failure of Applicant to comply with the Zoning Ordinance, and Federal Emergency Management Agency and Pennsylvania Department of Environmental Protection regulations, as part of the application process. (*Id.* ¶¶ 13, 16-18.) He also testified regarding prior incidents of flooding on the Property and that there were serious future flooding concerns that could result from the construction work required to build the additional

---

[3] Building Code Official Sam Prokopik also testified that he had observed placement of jumbo block and riprap along the stream bank of the Property. (FOF ¶ 15.) However, Fox stated that she had no knowledge of an application filed with the Conservation District that would have permitted such work. (*Id.*) This testimony was credited by the ZHB. (*Id.*)

manufactured home sites. (*Id.* ¶ 19.) D.J. Housley, also of KU Resources, testified that the Application did not satisfy the Zoning Ordinance's standards and application requirements, which did not allow the Borough to conduct the necessary review and analysis required for determining compliance with the special exception standards. (*Id.* ¶¶ 22-24.) The ZHB credited both Donald and D.J. Housley's testimony. (*Id.* ¶¶ 21, 25.) Finally, the ZHB heard testimony from James Sims, Fire Chief of the Holiday Park Volunteer Fire Company, who stated that he had responded to multiple serious flooding events on the Property between 2019 and 2022, that the Property was evacuated in 2019 and 2021 due to flooding and, in 2019, multiple existing home sites were damaged due to same. (*Id.* ¶¶ 26-27, 29.) The ZHB credited Sims' testimony. (*Id.* ¶ 28.)

A number of residents of the manufactured home park also testified in opposition to the Application, expressing concerns about traffic safety, flooding, impact on wetlands and wildlife, and potential rent increases. (*Id.* ¶¶ 11-12.) The ZHB found their testimony similarly credible. (COL ¶ 11.)

Based upon the above findings, the ZHB concluded that the proposed expansion constituted a natural expansion of a pre-existing nonconforming use. (*Id.* ¶ 2.) The ZHB determined that Article IV of the Zoning Ordinance governs expansion of pre-existing, nonconforming uses, and, consequently, Applicant was required to satisfy the criteria listed therein. (*Id.* ¶ 3.) However, the ZHB concluded "that the Applicant failed to submit the required plans, studies and other supporting materials that would allow [it] to evaluate whether the Application meets the criteria" for special exceptions. (*Id.* ¶ 4.) The ZHB was particularly concerned with the lack of plans or studies showing that the expansion complied with stormwater and floodplain regulations and Applicant's failure to include proper design

4

specifications under Section 405(A)(4) of the Zoning Ordinance, ZONING ORDINANCE § 405(A)(4). (*Id*. ¶¶ 4-5.) The ZHB also concluded Applicant did not show that the additional traffic that would be generated would be accommodated in a safe and efficient manner so as to minimize hazards and congestion. (*Id.* ¶ 6.) In addition, the ZHB determined that Applicant did not show that the expansion sought would not pose "a significant hazard to the public health[,] safety, and welfare" under Section 405(A)(7) of the Zoning Ordinance, ZONING ORDINANCE § 405(A)(7). (*Id*. ¶¶ 7-8 (citing *Silver v. Zoning Bd. of Adjust.*, 255 A.2d 506, 507 (Pa. 1969)).) Rather, the ZHB concluded that the evidence presented in opposition to the Application showed the expansion would create a significant hazard to the public health, safety, and welfare because the Property has experienced numerous serious flooding incidents and that ongoing flooding issues are present and would be exacerbated by additional manufactured home sites. (COL ¶¶ 9-11, 15.) The ZHB further concluded that while the Application references a stormwater detention facility, Applicant did not present any evidence or testimony showing that such a facility would mitigate the ongoing flooding issues on the Property. (*Id*. ¶ 12.) Nor did Applicant, in the ZHB's opinion, present evidence to address Donald Housley's testimony that all new or relocated units must be elevated above the flood plain, although Applicant acknowledged additional permitting and approvals would be needed. (*Id*. ¶¶ 12-14.) Thus, the ZHB concluded that credible testimony and substantial evidence established that the proposed expansion of the pre-existing nonconforming "use at the Property would be detrimental to the public health, welfare[,] and safety" and would impact current and future residents given the flood prone conditions of the Property. (*Id*. ¶ 15.) Accordingly, the ZHB denied the Application.

Applicant appealed the ZHB's Decision to common pleas. Without taking any additional evidence and relying on largely the same analysis as the ZHB, common pleas determined that the ZHB properly denied the Application because Applicant failed to satisfy its burden establishing an entitlement to expand the pre-existing nonconforming use of the Property. (Common Pleas' Opinion at 2, 6.) In turn, common pleas held that the ZHB did not commit an error of law, abuse of discretion, or make findings of fact not supported by substantial evidence and, therefore, affirmed. Applicant now appeals to this Court.[4]

## II. PARTIES' ARGUMENTS

Applicant raises two issues on appeal: (1) whether the ZHB abused its discretion and committed an error of law by denying Applicant's proposed expansion of a pre-existing nonconforming use; and (2) whether the Borough waived its ability to deny the Application based on incompleteness after accepting the Application and associated fees, and conducting a hearing on same. According to Applicant, the ZHB "conflated permitting requirements with the high-level or conceptual aspect of use," Donald Housley's testimony about potential challenges in the permitting process has no implication on the conceptual use of the Property, and the ZHB's conflation of the expansion of a nonconforming use with the permitting process was error and an abuse of discretion. (Applicant's Brief (Br.) at 1, 3-4.) Applicant also asserts that the ZHB abused its discretion by denying the

---

[4] "Where [common pleas] does not take additional evidence, we are limited to determining whether the [ZHB] committed an error of law or manifestly abused its discretion." *Coal Gas Recovery, L.P., v. Franklin Twp. Zoning Hearing Bd.*, 944 A.2d 832, 837-38 (Pa. Cmwlth. 2008) (citation omitted). "An abuse of discretion occurs when the findings are not supported by substantial evidence in the record." *Id*. at 838 n.9 (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

6

Application based on public safety concerns because the proposed use is already occurring on the Property and, in contrast, Applicant believes the Borough's permitting requirements for flood control create a public safety concern. (*Id*. at 6.) In addition, Applicant argues that the letter Applicant provided to the ZHB, wherein there was a rendering of the proposed expansion, location of the proposed home sites, and compliance with setback requirements, was sufficient to satisfy the Zoning Ordinance's requirements. Applicant asserts that it was error for the ZHB to conclude that the letter was not a proper site layout because the Zoning Ordinance does not indicate what a proper site layout entails. (*Id*. at 4-5.)

The ZHB responds that it did not commit an error of law or an abuse of discretion in denying the Application because in *Plum Borough v. Zoning Hearing Board of Borough of Plum*, 310 A.3d 815, 829-30 (Pa. Cmwlth. 2024), this Court recently upheld Article IV's requirements as permitted under *Silver*, 255 A.2d at 507, and Applicant failed to satisfy same. (ZHB's Br. at 13-14.)[5] The ZHB argues that it properly credited the testimony of Donald and D.J. Housley, and Sims, in concluding that the proposed expansion posed a hazard to the public health, safety, and welfare because of flooding concerns, and such credibility and evidentiary determinations should not be disturbed on appeal. (*Id*. at 15 (citing *Pennsy Supply, Inc. v. Zoning Hearing Bd. of Dorrance Twp.*, 987 A.2d 1243, 1250-51 (Pa. Cmwlth. 2009)).) In addition, while the ZHB acknowledged that Applicant provided the Narrative and a Special Exception Use Plan that referenced a stormwater detention facility, there was no testimony or evidence presented that showed how exactly the

---

[5] The ZHB also argues that its interpretation of the Zoning Ordinance was proper and should not be disturbed. (ZHB's Br. at 19-20 (citing *Hafner v. Zoning Hearing Bd. of Allen Twp.*, 974 A.2d 1204, 1210 (Pa. Cmwlth. 2009); *Adams Outdoor Advert., LP v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006); *Council of Middletown Twp., Delaware Cnty. v. Benham*, 523 A.2d 311, 317 (Pa. 1987)).)

7

proposed stormwater detention facility would mitigate or resolve the ongoing flooding on the Property. (ZHB's Br. at 15-16.) Thus, the ZHB contends that it properly determined that Applicant failed to submit required plans, studies, and supporting materials in the Application to permit the ZHB to evaluate the proposed expansion under Article IV and, in turn, the ZHB properly denied the Application. (*Id*. at 18-19.)

The Borough responds that Applicant was required to meet all the requirements set forth in Article IV when seeking a special exception. (Borough's Br. at 14-15.) The Borough further contends that under the Zoning Ordinance, if a specific use does not have express special exception criteria, then under Section 403(B) of the Zoning Ordinance, ZONING ORDINANCE, § 403(B), conditional use requirements are instead applied to special exceptions. (*Id*. at 15-16.) The Borough asserts, however, that regardless of whether Section 403(B) or 405 applies, Applicant simply did not submit sufficient evidence or testimony, with Garippo's testimony only addressing the economic aspects of the proposed expansion and with Applicant providing no evidence regarding the necessity of the expansion. (*Id*. at 16-18.) In contrast, the Borough presented extensive evidence, including the testimony of Donald and D.J. Housley, and Sims. (*Id*. at 17.) As such, the Borough believes that the ZHB properly analyzed the Application and did not commit an error or an abuse of discretion in making its factual findings and legal conclusions, and denying the Application. (*Id*. at 18.)

## III. DISCUSSION

"Generally speaking, '[a] special exception is not an exception to a zoning ordinance, but rather a use which is expressly permitted, absent a showing of a

8

detrimental effect on the community.'" *Tower Access Grp., LLC v. S. Union Twp. Zoning Hearing Bd.*, 192 A.3d 291, 300 (Pa. Cmwlth. 2018) (citation omitted) (brackets added). "In other words . . . '[t]he important characteristic of a special exception is that it is a conditionally permitted use, legislatively allowed if the standards are met.'" *Id*. Importantly, as this Court has explained, "**an applicant for a special exception has both the duty of presenting evidence and the burden of persuading the zoning hearing board that the proposed use satisfies the objective requirements of the zoning ordinance** for the grant of special exception." *Id*. (emphasis added) (citing *Berner v. Montour Twp. Zoning Hearing Bd.*, 176 A.3d 1058, 1069 (Pa. Cmwlth. 2018), *rev'd in part on other grounds*, 217 A.3d 238 (Pa. 2019)).[6]

Here, Section 1002(C) of Article X of the Zoning Ordinance provides:

1. No nonconforming use may be extended or expanded in any building or structure, or in or on the lot on which it is located, nor may any nonconforming use be moved to a different position upon the lot on which it is located, so as to alter the use or its location which existed at the time that the use became nonconforming.

2. No such nonconforming use shall be enlarged or increased or extended to occupy a greater lot area than was occupied at the effective date of adoption or amendment of this Ordinance, unless the ZHB shall interpret that the enlargement or extension is necessary by the natural

---

[6] In *Plum Borough*, 310 A.3d at 827-28, we recently opined on the limitations of the natural expansion doctrine and the applicability of Article IV of the Zoning Ordinance to proposed expansions of a pre-existing nonconforming use. Through an exhaustive analysis, we reiterated that the natural expansion doctrine is not unlimited, and municipalities may condition expansion of nonconforming use on the satisfaction of standards necessary for the preservation of public health, safety, and welfare. *Id*. at 827. In addition, "[w]e note[d] that municipalities often require applicants to proceed via special exception to expand a nonconforming use." *Id*. As such, we held that "consistent with *Silver*, the Borough has placed reasonable restrictions on the expansion of a nonconforming use by requiring applicants to satisfy the requirements [of Article IV of the Zoning Ordinance] applicable to all special exceptions." *Id*. at 829 (emphasis omitted).

9

expansion and growth of trade of the nonconforming use. **For the purposes of determining if an enlargement or expansion of nonconforming use meets this requirement, the applicant shall file an application for Special Exception pursuant to the requirements of Article IV of this Ordinance. The applicant must meet all the applicable requirements and criteria of Article IV in addition to providing evidence that the enlargement or extension is necessitated by the natural expansion and growth of trade of the nonconforming use**.

3. Whenever a use district shall be hereafter changed by a duly adopted amendment to this Ordinance, then any existing legal, nonconforming use of such changed district may be continued, and such use may be extended throughout the structure.

(R.R. at 223-24; ZONING ORDINANCE, § 1002(C) (emphasis added).)

Article IV of the Zoning Ordinance sets forth additional requirements an applicant seeking an enlargement of a pre-existing nonconforming use must meet. Relevant here, Section 404 of the Zoning Ordinance, ZONING ORDINANCE, § 404, sets out the procedural requirements for applying for a special exception for the expansion of a pre-existing nonconforming use and the applicable burden of proof. In relevant part, Section 404(A) provides:

3. Application Content. An application for approval of a Special Exception shall include the following:

a. One (1) copy of the application form provided by the Borough and completed by the applicant. If the applicant is other than the landowner, the landowner's authorization of the application and the nature of applicant's interest in the site shall accompany application.

b. Five (5) paper and one (1) electronic copies of a site plan meeting the requirements for a preliminary plan for land development as set forth in SALDO and, in addition, demonstrating conformity with all requirements of this Ordinance.

10

c. The Governing Body may charge fees for expenses related to the public hearing pursuant to Article IX of the [Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202,] and as established by resolution of the [Borough] Council.

4. Administrative review and determination of complete application: Within seven (7) working days after a Special Exception application is submitted, the Borough shall review the application for completeness of required submission items. Within said time, the Borough shall notify the applicant in writing if the application is incomplete and rejected, stating the deficiencies in the application and returning the filing fee. The applicant may reapply, submitting the fee and missing material at any time.

. . . .

6. Burden of Proof: In proceedings involving a request for a use by Special Exception, both the duty of initially presenting evidence and the burden of persuading the ZHB that the proposed use is authorized as a use by Special Exception and satisfies the specific or objective requirements for the grant of a use by Special Exception as set forth in this Ordinance rest upon the applicant. The applicant shall demonstrate that the request is not detrimental to the health, safety, and welfare of the neighborhood.

(R.R. at 100-01; ZONING ORDINANCE, § 404(A)(3)-(4), (6).) Section 405(A) of the

Zoning Ordinance, ZONING ORDINANCE, § 405(A), provides:

A. When considering applications for Conditional Uses and Special Exceptions the following general standards for all conditional uses and special exceptions shall be met:

1. In accordance with the Comprehensive Plan the use shall be consistent with the spirit, purposes, and the intent of this Ordinance.

2. Compliance with this Ordinance. The applicant shall establish by credible evidence that the application

11

complies with all applicable requirements of this Ordinance. The applicant shall provide sufficient plans, studies, or other data to demonstrate compliance.

3. Compliance with other laws. The approval may be conditioned upon the applicant demonstrating compliance with other specific applicable local, state, and federal laws, regulations, and permits.

4. The application shall include proper site layout, internal circulation, parking, buffering, and all other elements of proper design as specified in this Ordinance.

5. The applicant shall establish that the traffic from the proposed use will be accommodated in a safe and efficient manner that will minimize hazards and congestion and provide adequate access arrangements after considering any improvements proposed to be made by the applicant as a condition on approval. Ingress, egress, and internal traffic circulation shall be designed to minimize congestion during peak usage of the facility.

6. The proposed use shall not substantially change the character of any surrounding residential neighborhood after considering any proposed conditions upon approval.

7. The proposed use shall not create a significant hazard to the public health[,] safety, and welfare.

8. The proposed use shall be suitable for the property in question, and designed, constructed, operated, and maintained so as to be in harmony with and appropriate in appearance to the existing or intended character of the general vicinity.

9. Outdoor lighting, if any, shall be shielded and/or reflected away from adjoining properties so that no direct beam of light, but only diffuse or reflected light, enters adjoining properties.

(R.R. at 101-02; ZONING ORDINANCE, § 405(A).)

Here, Applicant argues the ZHB erred or abused its discretion because it conflated the special exception requirements in the Zoning Ordinance with other permitting requirements related to stormwater and flooding. Applicant asserts it should not be required to provide such detailed information or expend large sums of money to obtain such permits without first knowing whether the ZHB will permit the use. The Court agrees any environmental or other permitting is separate and distinct from applying for a special exception pursuant to a zoning ordinance. However, it is Applicant who is conflating what the Zoning Ordinance actually requires and what the ZHB found was lacking. Neither the Zoning Ordinance nor the ZHB's Decision requires Applicant to provide proof of permitting.[7] Rather, the Zoning Ordinance requires, among other things, evidence that traffic will be safely accommodated, the surrounding neighborhood will not be substantially changed, public health, safety, and welfare will not be negatively affected, and the proposed use is suitable for the property and in harmony with the character of the general vicinity. ZONING ORDINANCE, § 405(A)(5)-(8). This is what the ZHB found was lacking, concluding that Applicant only submitted evidence as to the economic impact of the proposed expansion. The ZHB was unpersuaded by Applicant's evidence and testimony, instead crediting the extensive testimony proffered by the Borough regarding the serious flooding concerns that currently exist on the Property and would be exacerbated by future expansion. The ZHB was free to make credibility and evidentiary determinations regarding the proposed expansion and the danger posed to public safety by expanding the Property further into the flood zone. *See Pennsy Supply, Inc.*, 987 A.2d at 1248.

---

[7] The Zoning Ordinance does, however, allow the ZHB to condition approval upon an "applicant demonstrating compliance with other specific applicable local, state, and federal laws, regulations, and permits." ZONING ORDINANCE, § 405(A)(3).

While the Zoning Ordinance also mentions that plans, studies, or other data related to site layout, internal circulation, parking, buffering, and other design elements should be included with an application, ZONING ORDINANCE, § 405(A)(4), this is the type of information a ZHB needs in order to evaluate whether a proposed use will negatively affect traffic, the general character of the neighborhood, or public health, safety, and welfare. *See* ZONING ORDINANCE, § 405(A)(2) ("The applicant shall provide sufficient plans, studies, or other data to demonstrate compliance" with the Zoning Ordinance's requirements.) Here, Applicant submitted the Narrative and map of the proposed expansion during the application process and hearing. In the Narrative, Applicant indicated that the proposed expansion was being sought as a special exception under Section 1002(C) of the Zoning Ordinance, that there were economic concerns regarding the limited number of units, and that specific compliance with other Borough ordinances and regulations would be submitted in the future. (R.R. at 248-49.) The map of the proposed expansion admitted during the hearing before the ZHB, which Applicant called the Special Exception Use Plan, is a one-page document outlining, in relevant part, the location of current and proposed home sites and the flood zone. (O.R. at 364.) Compared to the abundance of evidence presented by the Borough, which the ZHB found credible, the ZHB was not persuaded that Applicant satisfied the requirements of the Zoning Ordinance. This does not constitute an error of law or an abuse of the ZHB's discretion.

Finally, we consider whether the ZHB waived its ability to deny the Application because the Borough accepted the Application and associated fees, and the ZHB held a hearing on the Application. Applicant argues that once the Borough accepted the Application and associated fees, and conducted the hearing, the ZHB waived its ability to reject the Application based on insufficient information or lack

14

of permits from other agencies. (Applicant's Br. at 7-9 (citing *Gaughen LLC v. Borough Council of Borough of Mechanicsburg*, 128 A.3d 355 (Pa. Cmwlth. 2015); *Lehigh Asphalt Paving and Const., Co. v. Bd. of Supervisors of E. Penn Twp.*, 830 A.2d 1063 (Pa. Cmwlth. 2003)).) The ZHB responds that Section 1205(B) of the Zoning Ordinance, ZONING ORDINANCE, § 1205(B),[8] and Section 912.1 of the MPC, 53 P.S. § 10912.1,[9] give the ZHB the exclusive power to approve or deny an application for special exception. (ZHB's Br. at 19-22.) The ZHB argues *Gaughen* and *Lehigh* are inapposite because they dealt with deemed approvals. (*Id*. at 23.) The ZHB further asserts that *Gaughen* and *Lehigh* have no applicability in the instant case because the ZHB held a public hearing, considered evidence, and acted on the Application through a denial vote. (*Id*. at 23-24.)

In *Brookview Solar I, LLC v. Mount Joy Township Board of Supervisors*, 305 A.3d 1222 (Pa. Cmwlth. 2023), we considered a scenario similar to the one presented

---

[8] Section 1205(B) provides:

B. Special Exceptions. The [ZHB] shall hear and decide requests for special exceptions authorized by this Ordinance in accordance with the standards and criteria set forth in this Section and Article IV of this Ordinance. The [ZHB] may attach such reasonable conditions and safeguards as it may deem necessary.

ZONING ORDINANCE, § 1205(B).

[9] Section 912.1 of the MPC was added by Section 91 of the Act of December 21, 1988, P.L. 1329, and states:

Where the governing body, in the zoning ordinance, has stated special exceptions to be granted or denied by the board pursuant to express standards and criteria, the board shall hear and decide requests for such special exceptions in accordance with such standards and criteria. In granting a special exception, the board may attach such reasonable conditions and safeguards, in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of this act and the zoning ordinance.

53 P.S. § 10912.1.

in this case.  In *Brookview*, the applicant, relying on *Nextel Partners, Inc. v. Clarks Summit Borough/Clarks Summit Borough Council*, 958 A.2d 587 (Pa. Cmwlth. 2008), argued that the trial court erred by affirming a zoning hearing board's denial of a conditional use application because the application was deemed complete and accepted by the zoning officer.[10]  *Brookview*, 305 A.3d at 1236.  In examining *Nextel*, we opined that the *Nextel* Court "established that acceptance of a conditional use application does not constitute a determination that it complies with the technical requirements of the ordinance."  *Brookview*, 305 A.2d at 1237 (citing *Nextel*, 958 A.2d at 593).  In turn, because the ordinance in *Brookview* allowed only the zoning hearing board to act on an application, we found that it was irrelevant whether the zoning officer identified deficiencies in the application, and this did not bind the trial court or the zoning hearing board in their review of the technical requirements applicable to a proposed conditional use.  *Id*.  Moreover, we also opined on the language of the ordinance in *Brookview*, which allowed, but did not mandate, a zoning officer to reject an application as incomplete during the administrative review process. *Id*.  Thus, based in part on this reasoning, we rejected the applicant's request for remand and affirmed.

Section 404(A)(4) of the Zoning Ordinance addresses the administrative review process for applications for special exceptions, providing:

> 4.  Administrative review and determination of complete application: Within seven (7) working days after a Special Exception application is submitted, **the Borough shall review the application for completeness of required submission items**.  Within said time, **the Borough shall notify the applicant in writing if the application is incomplete and rejected**, stating the deficiencies in the application and

---

[10] We note, as we did in *Brookview*, that "[t]he law on conditional uses and special exceptions is virtually identical . . . . [and a] conditional use proceeding follows the procedures applied in a special exception proceeding."  305 A.3d at 1236 n.18 (citations omitted).

> returning the filing fee. The applicant may reapply, submitting the fee
> and missing material at any time.

(R.R. at 100-01; ZONING ORDINANCE, § 404(A)(4) (emphasis added).) A review of Section 404(A)(3) indicates that the contents of an application for special exception includes the application form, a site plan meeting certain requirements, and fees. ZONING ORDINANCE, § 404(A)(3). The Borough reviews the application merely to ensure that these items are included with the application, not for substance. This administrative review for completeness is distinct from the ZHB's ability to **substantively** review the submitted application materials and determine whether the application satisfies the Zoning Ordinance's technical requirements for special exception. *See Brookview*, 305 A.3d at 1237.

Here, Applicant submitted the Application and Narrative and the fee. It is unclear whether Applicant's Special Exception Use Plan (the map of the Property and proposed expansion) was submitted with the Application, as it appears, instead, that it was introduced during the hearing before the ZHB. Nevertheless, the Borough accepted the Application and a hearing was held. Similar to *Brookview*, the ZHB alone had the authority to approve or deny the Application under Section 1205(B) of the Zoning Ordinance and Section 912.1 of the MPC, and the process for administrative review and determination of completeness of applications set forth in Section § 404(A)(4) had no bearing on the ZHB's authority to deny the Application.

Applicant points to *Gaughen* and *Lehigh* as standing for the proposition that the ZHB cannot deny an application for special exception as deficient after accepting the application. However, we agree with the ZHB that these cases are inapposite because they both involved deemed approvals or applicants seeking deemed approvals through an action in mandamus, which is not the case here.

17

In sum, the Borough's acceptance of the Application did not resolve the merits of the Application, and the ZHB did not waive its ability to review the Application after the Application was submitted and accepted.

## IV. CONCLUSION

For the foregoing reasons, we conclude the ZHB did not commit an error of law or abuse its discretion in denying the Application and it was proper for the ZHB to credit the evidence and testimony of the Borough in support of denying the Application. We further conclude that the authority to approve or deny an application for special exception rested with the ZHB and was not waived when the Borough accepted the Application. Accordingly, we affirm.

_____
RENÉE COHN JUBELIRER, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Plum Creek MHC, LLC,          :
                   Appellant      :
                                 :
           v.                :    No. 1323 C.D. 2024
                                 :
The Zoning Hearing Board of    :
The Borough of Plum           :

**O R D E R**

     **NOW**, December 8, 2025, the Order of the Court of Common Pleas of Allegheny County, dated August 29, 2024, is **AFFIRMED**.

                             _____
                             RENÉE COHN JUBELIRER, President Judge